703 P.2d 898

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**T.L. OWENS, Defendant-Appellant.**

**No. 7669**

Court of Appeals of New Mexico.

Oct. 18, 1984.

Certiorari Quashed July 9, 1985.

J.W. Neal, Neal & Neal, Hobbs, John Quinn, Santa Fe, Nancy Augustus Singleton Law Offices, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals his convictions on twelve counts of commercial gambling in violation of NMSA 1978, Section 30–19–3(B) (Repl.Pamp.1984), raising three issues. First, defendant contends the trial court erred in holding that the statute setting forth commercial gambling as a felony does not require proof that defendant was involved in a gambling business having profit as its primary aim. Second, and closely related to the first issue, defendant raises the question as to whether, assuming the trial court was correct in its ruling, Section 30–19–3(B) is unconstitutionally vague or whether it creates an irrational relationship to a legitimate state goal. Finally, defendant contends the introduction of taped conversations between himself and a third party violated defendant's right of confrontation when the third party did not testify at trial. We will discuss the first two issues together. Other issues listed in the docketing statement but not

briefed are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

### 1. Facts

The state's evidence consisted primarily of a series of tape recordings of telephone conversations between defendant and a man by the name of Herbert "Speedy" Newman. Mr. Newman's phone had been tapped under a court order based on information provided by the Governor's Organized Crime Commission. Defendant's phone was not tapped. A witness for the state, qualified as an expert in commercial gambling, explained the terminology of commercial gambling, including such terms as "the line," "over and under" bets, "parlay" bets and "teaser" bets. He also explained how commercial gamblers refer to given amounts of money. For example, a "nickel" means five hundred dollars. This expert then analyzed each of the taped conversations. He testified that twelve bets had been placed by Mr. Newman with defendant on football games during a three-week period in late 1980 for a total of $26,500.

A state police officer accompanied by a special agent of the F.B.I. went to defendant's house to make the arrest. When they entered defendant was talking on one of five phones installed in his house. The officers seized booklets, "line sheets" and note pads. During the next hour the officers observed that defendant's phone rang between fifteen and twenty times. One of the exhibits introduced was a writing containing a series of bets between defendant and Newman which corresponded with the bets made during the phone conversations.

At the conclusion of the state's case, defendant moved in chambers for a directed verdict on the ground that the commercial gambling statute was unconstitutionally vague. The trial court denied the motion and stated, during a colloquy with counsel, that the only difference between "gambling" and "commercial gambling" is that the former consists of making an offer to bet whereas the latter consists of accepting an offer to bet. The trial court further stated:

> You are correct that I have ruled and will rule that the distinction between that offense which is defined as commercial gambling and that misdemeanor offense which is defined as gambling being the placing of a bet does not depend upon the number of transactions, nor is it my view that commercial gambling named as such requires that there be established that betting was done as a profit making business or undertaking and I am prepared to rule in respect to that and I am prepared to deal with your proposed instructions addressing that issue squarely in holding that. I am going by the plain language of the statute and propose to instruct on it.

On the basis of the trial court's ruling that the state did not have to establish a profit-making motive and that a social bet could form the basis for a commercial gambling conviction, defendant elected not to take the stand and testify. He made a tender of proof that he would have testified that he did not operate a gambling business and that he made only social bets for his own amusement.

The trial court refused defendant's requested instructions which drew a distinction between commercial gambling and social gambling and defined commercial gambling as "a business operation ... having financial profit as it's [sic] primary aim." The trial court gave separate instructions for each of the twelve counts which simply tracked the language of Section 30–19–3(B), included the date of each alleged offense, and told the jury that to convict they need only find beyond a reasonable doubt that defendant "did knowingly receive, record or forward bets or offers to bet."

### 2. The Commercial Gambling Statute

**(a) Claimed error in the trial court's interpretation of Section 30–19–3(B)**

Section 30–19–3 reads in pertinent part:

Commercial gambling consists of either:

  *  *  *  *  *  *

B. receiving, recording or forwarding bets or offers to bet;

    \*    \*    \*    \*    \*    \*

Section 30–19–2 provides in pertinent part:

Gambling consists of:

A. making a bet;

    \*    \*    \*    \*    \*    \*

NMSA 1978, Section 30–19–2 (Repl.Pamp. 1984).

Commercial gambling is a fourth degree felony, while gambling is a petty misdemeanor.

Defendant argues that the trial court's interpretation of commercial gambling would necessarily include simple gambling; therefore, defendant did not take the stand because his testimony would amount to an admission of guilt.

Further, defendant argues that to construe the "commercial gambling statute to include social gambling would raise a host of constitutional problems," including void-for-vagueness and an irrational relationship to a legitimate state goal. Because we decide that commercial gambling under Section 30–19–3(B) requires more than a single act of gambling under Section 30–19–2(A), we have eliminated the premise for defendant's constitutional claims, even assuming he has standing to raise them. *See State v. Marchiondo*, 85 N.M. 627, 515 P.2d 146 (Ct.App.1973).

We recognize that a statute violates due process if men of ordinary intelligence must guess at its meaning and differ as to its application. *State v. Carr*, 95 N.M. 755, 626 P.2d 292 (Ct.App.1981). We also recognize that statutes which permit the state to subject one person to the possibility of greater punishment than another who has committed an identical act violate the equal protection clauses of the state and federal constitutions. *State v. Chavez*, 77 N.M. 79, 419 P.2d 456 (1966).

Defendant would have us exclude "social gambling" from Section 30–19–3(B) in order to prevent unequal punishment for the same act and to clarify the legislature's intent in enacting the two provisions. As we interpret the statute, however, the legislature did not intend the distinction for which defendant contends.

The trial court commented that the only difference between Section 30–19–2(A) and Section 30–19–3(B) depends on whether the bet is offered or accepted. This interpretation by the trial court is not reasonable. Section 30–19–2(A) makes it a misdemeanor to *make* a bet. NMSA 1978, Section 30–19–1(A) (Repl.Pamp.1984) defines a "bet" as "a bargain in which the parties agree that, dependent upon chance, even though accompanied by some skill, one stands to win or lose anything of value specified in the agreement." Thus, a bet is made when two or more people agree. By definition, a bet is made when one *accepts* an offer to bet. Under the trial court's definition, one who makes the bet in a social context is guilty of a petty misdemeanor but one who accepts the offer is guilty of a fourth degree felony. We agree with defendant that in the context of social betting it is more often than not impossible to differentiate making a bet from receiving a bet. Which participant is the misdemeanant and which is the felon?

The trial court's comment that the distinction between gambling and commercial gambling "does not depend upon the number of transactions" is likewise incorrect. Section 30–19–3(B) clearly requires more than one bet or offer to bet. While it takes two parties to make a bet under Section 30–19–2(A), one bet or offer to bet received, recorded or forwarded does not constitute commercial gambling under Section 30–19–3(B).

In distinguishing between gambling under Section 30–19–2(A) and commercial gambling under Section 30–19–3(B), defendant urges us to interpret commercial gambling as meaning "gambling as a business operation, having financial profit as its primary aim." He relies on Judge Sutin's specially concurring opinion in *State v. Marchiondo*, from which the quoted language is taken. 85 N.M. at 631, 515 P.2d 146. Defendant argues that in interpreting

a statute, a court must give words their ordinary meaning. *State ex rel. Bingaman v. Valley Savings & Loan Association*, 97 N.M. 8, 636 P.2d 279 (1981). While we have no quarrel with that principle of statutory construction, defendant's emphasis on the word "commercial" is misdirected.

The word "commercial" is used in the name of the offense "commercial gambling." Commercial gambling may be committed in any of the six ways stated in Section 30–19–3. Our concern is with the meaning of subsection B, which, in contrast to subsection A (which refers to earnings) and subsection D (which refers to gain), does not depend on earnings or gain and, in our opinion, does not require a profit motive, although profit may be involved. We have no authority to expand the offense to include a profit motive when the substantive offense, as defined, does not include that language. Such would be adding to the legislative definition. *State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). Nor can we even consider "commercial" in the name to determine the meaning of the offense unless subsection B is ambiguous. *State v. Ellenberger.* What is covered in subsection B is not ambiguous. As stated by the supreme court in *State v. Ellenberger:* "[I]t is not the business of the courts to look beyond the plain meaning of the words of a clearly drafted statute in an attempt to divine the intent of the Legislature." 96 N.M. at 288, 629 P.2d 1216.

Interpreting then the language of the statute, we hold: First, gambling under Section 30–19–2(A) is distinguished from commercial gambling under Section 30–19–3(B) in that while one act may constitute a violation under the former, it cannot under the latter. Under Section 30–19–3(B), there must be more than one act. Second, and as a further distinction between the two provisions, one can violate Section 30–19–3(B) without ever accepting a bet. One must, however, either receive, record or forward bets or offers to bet.

■ In interpreting a statute it is appropriate to consider the ends sought to be accomplished by the legislature, *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977), and to give effect to the legislative intent. *City of Albuquerque v. Cauwels & Davis, Management Co.*, 96 N.M. 494, 632 P.2d 729 (1981). We construe Section 30–19–3(B) to proscribe the activities of those persons whose conduct falls within the purview of the statute. They are commonly known as bookmakers. *See State v. Vlahos*, 50 Wis.2d 609, 184 N.W.2d 817 (1971).

■ This is different from the casual bet between friends where the primary purpose is to heighten the excitement or interest in an event such as a game. Parties who make a bet with each other are engaged in simple gambling, because each stands to win or lose on the basis of the agreement. One who receives, records or forwards bets or offers does more than risk winning or losing on the basis of a single bet. While it may be true that a casual social bettor may be the customer of one engaged in commercial gambling, the former does not graduate from a misdemeanant to a felon simply by accepting an offer to bet. Conversely the status of a commercial gambler is achieved under Section 30–19–3(B) when a person receives more than one bet (whether or not that person makes the bets) or records or forwards bets or offers to bet. What matters under our statute is the plural activity; it makes no difference whether the plural activity is or is not "social." Defendant could be a social receiver, recorder or forwarder and still be guilty of commercial gambling.

■ The difference between "commercial gambling" and "gambling" depends upon the facts of each case. A review of the record before us reveals a number of distinguishing characteristics that could be considered by the jury as pointing to commercial gambling: Mr. Newman placed the bets with defendant; the latter appeared to set the terms of the transactions; the amounts involved were substantial; there were a number of telephones installed at defendant's house; incriminating written

material was seized; and the parties used esoteric terminology.

Therefore, we hold the trial court incorrectly interpreted the gambling statute; however, this does not answer the question of whether a new trial is required.

### (b) Is a new trial required?

Defendant contends that because the trial court's interpretation was incorrect, his convictions should be set aside and the case remanded for new trial so the jury could decide whether defendant's conduct amounted at most to social gambling, a misdemeanor under Section 30–19–2(A).

■ We reject this argument for the following reasons. First, although the distinctions between gambling and commercial gambling made by the trial court were erroneous, it correctly instructed the jury in the language of the statute. *State v. Gunzelman*, 85 N.M. 295, 512 P.2d 55 (1973).

Second, the trial court did not prevent defendant from testifying or from presenting a defense if he had one. Defendant chose not to take the stand.

Finally, defendant suffered no prejudice. Based on the correct interpretation of the statute, his testimony, as tendered, would not have constituted a defense. Still, he could have testified and was not prevented from doing so.

Given our interpretation of Section 30–19–3(B) that it takes more than one act to violate that provision, there may have been an issue as to the number of counts actually involved. Defendant does not, however, attack the sufficiency of the evidence or make any claim of merger. Therefore, the convictions must be affirmed unless the confrontation issue requires a different result.

### 3. The Confrontation Issue

The federal and state constitutions guarantee an accused in a criminal proceeding "the right ... to be confronted with the witnesses against him." United States Constitution, sixth amendment; N.M. Const. art. II, § 14.

Over defendant's objection, the trial court allowed the introduction of the taped telephone conversations between defendant and Mr. Newman. The state had subpoenaed Mr. Newman to appear at trial, and had arranged to pay his air fare and expenses so he could fly from Fresno, California, where the district attorney's office had been in contact with him. The day before trial Mr. Newman telephoned the district attorney's office from Las Vegas, Nevada to advise he was ill and under doctor's orders not to travel.

A two-pronged test for the admissibility of hearsay evidence when the declarant is not present for cross-examination at trial was enumerated in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), as follows:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 66, 100 S.Ct. at 2539.

■ Defendant does not question the second prong, and appears to concede that the tapes fall outside the hearsay rule. We agree. We are dealing with a conversation between two people, one of whom is defendant. As to his part of the conversation, there is no hearsay under NMSA 1978, Evid. Rule 801(d)(2) (Repl.Pamp. 1983). As to Newman's part of the conversation, this would be excepted from the hearsay rule under NMSA 1978, Evid. Rule 804(b)(4) (Repl.Pamp.1983).

Defendant asserts, however, that under special circumstances, which he claims exist in his case, a defendant should be entitled to cross-examine the declarant even though the testimony at issue does not constitute hearsay. Specifically, defendant

claims he should be allowed to cross-examine Mr. Newman concerning his intent to risk something of value as required under the gambling statutes. *See* § 30–19–1(A). He points out, for example, that if neither Mr. Newman nor defendant ever intended to collect on the purported bets, then the activity would not violate the gambling statutes. This claim does not accurately reflect what occurred in the trial court. In objecting to admission of the tapes, defendant affirmed that the tapes showed "social bets" but claimed a denial of the right to confrontation because he could not cross-examine Newman as to what Newman "meant" in placing the social bets.

The first prong of the *Roberts* test involves a determination of whether the declarant is unavailable in the constitutional sense. This requires the state to demonstrate that a good-faith effort has been made to secure the declarant's presence at trial. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The court in *Roberts*, however, noted that unavailability did not have to be demonstrated in every case. 448 U.S. at 65, n. 7, 100 S.Ct. at 2538. The court cited *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), in which a plurality of the court held that the state was not required to produce an out-of-court declarant where the utility of cross-examination was remote.

 We hold there was no denial of the right to confront a witness for the following reasons. First, we are dealing with an unavailable declarant in a constitutional sense. *See State v. Martinez*, 99 N.M. 48, 653 P.2d 879 (Ct.App.1982). We are *not* concerned with showing unavailability under an evidence rule, *cf. State v. Mann*, 87 N.M. 427, 535 P.2d 70 (Ct.App.1975), so as to admit hearsay. This issue is presented on the basis that the statements on the tapes were not hearsay. The prosecutor recited his efforts to have Newman present as a witness. These efforts are not challenged factually; they show a good-faith effort, in the constitutional sense, to have Newman available and that he was una-

vailable. The reliability of the statements on the tapes is not challenged. Confrontation requirements were satisfied.

Second, the utility of cross-examination was remote. Defendant wanted to cross-examine Newman as to what Newman meant by placing social bets. What Newman meant in placing social bets is not relevant to defendant's guilt in receiving, recording or forwarding social bets.

Finally, the proper authentication of the recordings eliminated the need to cross-examine as to memory, perception, etc. (*See State v. Baca*, 82 N.M. 144, 477 P.2d 320 (Ct.App.1970) for the requirements of proper authentication of recordings.) The combination of an authentic recording and the lack of relevance of the desired cross-examination shows no confrontation violation.

The trial court did not err in admitting the tapes.

### 4. Conclusion

Defendant's convictions are affirmed.

IT IS SO ORDERED.

WOOD and MINZNER, JJ., concur.