781 P.2d 306
**STATE of New Mexico,**
Plaintiff–Appellee,

v.

**Christopher Lincoln MARTINEZ,**
Defendant–Appellant.

**No. 10591.**

Court of Appeals of New Mexico.

June 1, 1989.

Certiorari Denied June 15, 1989.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Linda Yen, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

A jury found defendant guilty of three counts of assisting escape of inmates from the State Penitentiary, contrary to NMSA 1978, Section 30–22–11 (Repl.Pamp.1984). Defendant has raised nine issues on appeal which we have consolidated and discuss as follows: (1) whether the charges of assisting escape were improperly filed; (2) whether defendant's convictions and sentences on three counts of assisting escape violate federal and state prohibitions against double jeopardy; (3) claim of error as to the admission of evidence; (4) sufficiency of evidence; and (5) whether the

trial court erred in denying defendant's motion to dismiss. We affirm.

FACTS

This case arose out of the July 4, 1987, escape by Jimmy Kinslow, William Wayne Gilbert, and David B. Gallegos from the State Penitentiary. After obtaining a gun the three inmates breached the prison's perimeter fences and made their way without detection to the city of Santa Fe where they hid in a storage shed. Three weeks later, on July 25, 1987, defendant was contacted by one of the escapees, his brother-in-law, David Gallegos, and was asked to travel to Santa Fe and drive the three to Albuquerque. Defendant agreed and took the escapees to Albuquerque and checked them into a motel.

On subsequent nights defendant drove the escapees to several different motels, paid for their rooms, and provided them with food and beer. On July 29 Kinslow left the group in Albuquerque and, without notice to defendant or his other companions, took defendant's car. Defendant's car was subsequently found broken down and abandoned at a rest stop in Arizona. Thereafter, defendant borrowed a car from a friend and drove Gallegos and Gilbert to Garden Grove, California. Defendant and each of the three escapees were subsequently arrested by authorities in California.

Defendant was charged with two counts of harboring and aiding a felon, contrary to NMSA 1978, Section 30-22-4 (Repl.Pamp. 1984), and three counts of assisting escape. Following his indictment, defendant moved to have the charges of assisting escape dismissed, contending that the charges were improper and that only the charges of harboring or aiding a felon were applicable under the facts herein. The court denied the motion, holding that despite the three-week interval between the inmates' initial escape and the time that defendant was alleged to have provided assistance, the charges were appropriate because the crime of escape was a continuing offense. At the conclusion of defendant's trial, the trial court directed a verdict in favor of defendant on the two counts of harboring

or aiding a felon but declined to dismiss the charges of assisting escape. Following deliberation, the jury found defendant guilty of each of the three counts of assisting escape.

## I. PROPRIETY OF CHARGES

Defendant contends that he was improperly charged with the offenses of assisting escape, arguing that he had no involvement in the actual breakout from the penitentiary, that any assistance which may have been given by him to the inmates occurred several weeks after the escape had been completed, and that the trial court erred in ruling that escape was a continuing offense.

Assisting escape as defined in Section 30-22-11 consists of

A.   intentionally aiding any person confined or held in lawful custody or confinement to escape; or

B.   any officer, jailer or other employee, intentionally permitting any prisoner in his custody to escape.

Whoever commits assisting escape is guilty of a third degree felony.

The Uniform Jury Instruction propounded by our supreme court states the elements of the offense as follows:

1.   (name of prisoner) was in [custody of (name of peace officer)] [confinement at _____];

2.   (name of prisoner) escaped;

3.   The defendant aided the escape of (name of prisoner);

4.   This happened in New Mexico on or about the _____ day of _____, 19___.

SCRA 1986, 14-2224 (footnotes omitted).

To answer the question of whether the offense of escape is a continuing offense, we examine the nature and elements of the offense of escape. NMSA 1978, § 30-22-9 (Repl.Pamp.1984). Specifically, we consider whether escape constitutes a continuing offense so that an escapee continues to commit the offense as long as he voluntarily remains at large, or whether the offense is complete once the escapee has successfully breached the place where he was

jailed or confined and reached a point of temporary safety beyond immediate active pursuit. Concomitantly we also inquire whether charges of assisting escape of inmates may properly be brought against one who aids and assists inmates after they have broken away from confinement and are hiding from law enforcement authorities. These issues are matters of first impression in this jurisdiction.

Defendant argues that escape is not a continuing offense and, therefore, the trial court erred in allowing the prosecutor to indicate during jury selection that escape is a continuing offense and instructing the jury that escape constitutes a continuing offense. He also argues that the charges of assisting the escape of prisoners were improper and that the applicable charges, if any, which properly could be brought against him were restricted to charges of harboring or aiding a felon or felons.

■ We disagree with each of defendant's contentions. The crime of escape does not end at the prison door, nor at a point in time when a prisoner successfully eludes immediate pursuit or reaches temporary sanctuary. At the time defendant picked up the three inmates in Santa Fe and drove them to Albuquerque, intensive search operations were being carried out by law enforcement officials in the area where the escapees were hiding. Despite the actions of law enforcement officials, the three inmates herein managed to elude detection and make their way to a hiding place in Santa Fe. Three weeks later defendant picked up the three inmates, drove them to Albuquerque, and later took Gallegos and Gilbert to California.

The crime of escape as defined in Section 30–22–9 constitutes a second degree felony. This statute provides in part,

Escape from penitentiary consists of any person who shall have been lawfully committed to the state penitentiary:

A. escaping or attempting to escape from such penitentiary; or

B. escaping or attempting to escape from any other lawful place of custody or confinement and although not actually within the confines of the penitentiary.

When interpreting penal statutes, a court must consider the objectives and purposes sought to be accomplished by the legislature and give effect to the legislative intent. *State v. Owens*, 103 N.M. 121, 703 P.2d 898 (Ct.App.1984); *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (Ct.App.1976).

In an analogous case the Alaska Court of Appeals in *Wells v. State*, 687 P.2d 346 (Alaska App.1984), considered the question of whether the crime of escape constituted a continuing offense under Alaska law. The court observed,

Alaska courts have long recognized that a major risk generated by an escape is potential harm caused by the escapee while at large. *See, e.g., Alex v. State*, 484 P.2d 677, 685 (Alaska 1971). In *Alex*, the court rejected an equal protection challenge to the statutory scheme imposing greater penalties on felons who escape than on misdemeanants. The court said: "The legislature could reasonably have believed that persons convicted of felonies which are generally more serious crimes than misdemeanors, present a greater threat to the public. Thus, a greater effort to deter their escape may reasonably be made." *Id.* ...

We therefore conclude that escape under Alaska law is a continuing offense. *Id.* at 350.

Similarly, in *Campbell v. Griffin*, 101 Nev. 718, 710 P.2d 70 (1985), the Nevada Supreme Court, in considering the duress defense to a charge of escape from the Nevada State Prison, noted,

*because* escape is by its nature a continuing offense that the escapee must show a bona fide effort to return to custody as soon as the claimed duress has lost its coercive force. *See generally United States v. Bailey* [444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)] * * * * If the crime of escape occurred only during the course of the escapee's initial departure from custody, and did not continue thereafter, there would be no duty for the escapee to report to the authorities after the duress had terminated. *Cf.*

*United States v. Chapman,* 455 F.2d 746 (5th Cir.1972). [Emphasis in original.] *Id.* at 72. *See also State v. Burnett,* 292 Minn. 484, 195 N.W.2d 189 (1972); *Parent v. State,* 31 Wisc.2d 106, 141 N.W.2d 878 (1966). *See generally* Annotation, *Duress, Necessity, or Conditions of Confinement as Justification for Escape from Prison,* 69 A.L.R.3d 678 (1976).

In *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the United States Supreme Court also considered the nature of the offense of escape from federal custody. There defendants contended that they could not be convicted of escape because the conditions of their confinement were so intolerable as to validate their defense of duress. The Supreme Court, however, held that the duress defense sought to be raised by defendants was not applicable, because defendants failed to offer evidence justifying their failure to surrender during the weeks following their escape. The Court wrote,

> we think it clear beyond peradventure that escape from federal custody * * * is a continuing offense * * * Given the continuing threat to society posed by an escaped prisoner, "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States,* 397 U.S. 112, 115 [90 S.Ct. 858, 860, 25 L.Ed.2d 156] (1970). Moreover, every federal court that has considered this issue has held, either explicitly or implicitly, that § 751(a) defines a continuing offense. [Emphasis added.]

*Id.* 444 U.S. at 413, 100 S.Ct. at 636.

After *Bailey* was decided, our supreme court adopted a duress instruction, SCRA 1986, 14–5132, permitting a defendant to assert the defense of duress in an escape case. This instruction provides that a defendant, relying upon duress as a defense to the charge of escape, must report "immediately to the proper authorities when he attain[s] a position of safety from the immediate threat." The Committee Commentary to the instruction cites *Bailey,* including its requirement that "there must be evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress has lost its coercive force." We conclude the adoption of this duress instruction, similar to the rationale articulated by the Supreme Court in *Bailey,* also indicates that our escape statute constitutes a continuing offense. *See also State v. Norush,* 97 N.M. 660, 642 P.2d 1119 (Ct.App.1982).

■ The trial court, over defendant's objection, instructed the jury that "[e]scape is a continuing offense. That is, it commences at the time an inmate flees from lawful custody or confinement and continues until he is apprehended or surrenders." The instruction is a correct statement of the law. The district court may give additional jury instructions not contained in the Uniform Criminal Jury Instructions if the instruction is brief, impartial, and free from hypothesized facts and is not prohibited by the UJI, does not alter or conflict with an approved instruction, and goes to definitions not covered by the approved instructions. SCRA 1986, UJI Criminal General Use Note; *State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). Viewing the plain language of the provisions of Section 30–22–9 and the stated seriousness of the offense together with the clear legislative purpose of deterring escape, we conclude that the statute indicates a legislative intent that escape constitutes a continuing offense. Thus, an individual who intentionally aids a person to avoid recapture, who he knows has escaped from lawful custody, may properly be charged with the offense of assisting escape. § 30–22–11.

Defendant claims that the proper charges for the acts he allegedly committed are harboring or aiding a felon. The offense of harboring or aiding a felon is declared to constitute a fourth degree felony and, as defined in Section 30–22–4, provides in applicable part that the crime is committed when "any person … knowingly conceals any offender or gives such offender any other aid, knowing that he has committed a felony, with the intent that he escape or avoid arrest, trial, conviction or punishment."

Defendant asserts that the legislature by enacting two separate offenses, assisting escape and harboring a felon, intended to attach greater culpability to one who assists individuals who have been confined to break out of the penitentiary than to one who gives assistance to a fugitive who has already completed his escape from custody or confinement. Defendant also argues that under the facts of this case, if both statutes are interpreted to cover the same type of conduct, Section 30–22–4 must be deemed to be the controlling statute because the latter section specifically addresses the criminal liability for accessories after the fact. A review of the legislative history of the crime of harboring or aiding a felony, however, dispenses with this argument.

Section 30–22–4 "grew out of the common law of accessories after the fact." *State v. Mobbley*, 98 N.M. 557, 558, 650 P.2d 841, 842 (Ct.App.1982). It follows closely a similar earlier statute enacted by 1949 N.M. Laws, Chapter, 53, entitled, "An Act Defining an Accessory After the Fact" which was compiled as NMSA 1953, Section 40–1–9. The 1949 enactment "defined such accessories in words similar to what now appears as § 30–22–4." *Id.* Given that escape is a continuing offense, it would be illogical that one who assists an escapee while he is at large is an accessory *after* the escape. Thus, examination of the legislative history of Section 30–22–4 indicates that the offense of harboring or aiding a felon was not meant to supersede the crime of assisting escape in the context of this case.

Defendant relies upon *Orth v. United States*, 252 F. 566 (4th Cir.1918), and cases which are the progeny of *Orth*, for his argument that harboring statutes have been used to prosecute those who assist escapees after they have placed themselves beyond immediate pursuit. *See United States v. Vowiell*, 869 F.2d 1264 (9th Cir. 1989). In *Orth* the court based its holding on the proposition that "[w]hen the physical control has been ended by flight beyond immediate active pursuit, the escape is complete." *Id.* at 568. We have rejected that proposition and believe that the United

States Supreme Court has also. Modern federal cases in which persons have been prosecuted for harboring escapees, *e.g.*, *United States v. Eaglin*, 571 F.2d 1069 (9th Cir.1977), are founded on a federal statute, 18 U.S.C. Section 1072 which specifically speaks of harboring or concealing "any prisoner after his escape." *State v. Brown*, 8 Wash.App. 639, 509 P.2d 77 (1973) arises out of a similar statute.

Finally, we are buttressed in our conclusion by the New Mexico statutory scheme. NMSA 1978, Section 30–22–7 (Repl.Pamp. 1984) defines "Unlawful rescue." NMSA 1978, 30–22–12 (Repl.Pamp.1984) defines "Furnished [Furnishing] articles for prisoner's escape." If the crime of "Assisting escape" defined in Section 30–22–11 were limited as defendant argues, its scope would be consumed almost totally by those two offenses. Defendant's construction of the statute must be rejected.

Under the record before us, we find no error in the charges filed by the state, which are the subject of defendant's appeal, or in the remark of the prosecutor or instructions given by the court.

## II.  CLAIM OF DOUBLE JEOPARDY

■ Defendant next asserts that the charges of assisting in the escape of Gallegos, Gilbert, and Kinslow violate the prohibition against double jeopardy, contrary to the United States Constitution, amendments V and XIV, and the New Mexico Constitution, Article II, Section 15. In advancing this argument defendant reasons that the state has split one criminal offense into three separate prosecutions, resulting in multiple punishment for one offense in violation of the federal and state interdictions against double jeopardy.

Evidence adduced at trial indicated that defendant drove to a storage locker located on Airport Road in Santa Fe and met the three inmates. Thereafter he drove Gallegos, Kinslow, and Gilbert to Albuquerque. Defendant, relying on *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), contends that since there was only one act of transportation, this could

constitute but one offense. In *Bell* appellant was charged under the Mann Act, 32 U.S.C., Section 84, with illegally transporting two women across state lines on the same trip and in the same vehicle. The Court held that defendant's action constituted one offense for the purposes of punishment, not two.

The state argues that both public policy considerations and determination of legislative intent are critical factors in the determination of whether multiple prosecutions should be permitted under the facts of the present case. In *State v. Smith*, 94 N.M. 379, 610 P.2d 1208 (1980), the supreme court considered an analogous argument. Smith was arrested and charged with four separate counts of trafficking with intent to distribute narcotics. Law enforcement officers seized a bag containing approximately ten pounds of various types of pills separated into smaller bags. Smith contended that there could be but one offense of trafficking in drugs and that the transaction constituted the "same offense," not four. The supreme court rejected this argument, observing that there is no violation of the prohibition against double jeopardy because the same evidence rule does not bar prosecution on each of the drug counts and that "[T]he public interest and the intent of our drug laws militate against * * * permitting * * * the merger of the four counts of trafficking in the four separate drugs." *Id.* at 381, 610 P.2d at 1210. Similarly, in *State v. Johnson*, 103 N.M. 364, 707 P.2d 1174 (Ct.App.1985), this court held that the act of firebombing a residence occupied by six people could constitute multiple offenses. There defendant's convictions on four counts of attempted first degree depraved mind murder, two counts of attempted second degree murder, and negligent arson were upheld. The question of whether multiple punishments run afoul of the double jeopardy clause is in part, governed by legislative intent. *State v. Ellenberger*, 96 N.M. 287, 290, 629 P.2d 1216, 1219 (1981).

Viewing the public policy considerations of deterrence evinced by the legislature, we find defendant's claims of double jeopardy inapplicable herein.

## III. ADMISSIBILITY OF EVIDENCE

We consider under this point defendant's contentions that the court erred in admitting evidence and testimony concerning events which occurred after July 25, 1987; defendant's claim that oral statements given by him to FBI Agents William Wright and John Kinard should have been suppressed; that the pistol and bullets introduced into evidence at defendant's trial were improperly seized; and that oral and written statements given by Jimmy Kinslow and testified to by State Police Officer David Osuna at defendant's trial were hearsay and violated defendant's right to confront witnesses called against him.

■ (a) Defendant argues that the trial court erred in admitting into evidence a .38 caliber pistol, cartridges, a motel registration card, three birth certificates, and an article on cosmetic surgery which were seized on July 30 at the time he was arrested in California with Gallegos and Gilbert. Additionally, defendant asserts that there was no evidence linking these exhibits to his alleged acts of picking up the three escapees in Santa Fe and transporting them to Albuquerque, that the exhibits were irrelevant and prejudicial, and that since the trial court instructed the jury that the charges of assisting escape occurred in Santa Fe County, the admission of testimony and exhibits relating to events after July 25, 1987, and outside Santa Fe County, was prejudicial and denied him due process of law and a fair trial.

At the time of defendant's arrest a pistol was found under the front seat of the car he was driving and several pistol cartridges were found in the clothing he was wearing. The record indicates that defendant consented to the search of his car and the cartridges were obtained following a search of his person incident to his arrest.

The exhibits in question were admissible and relevant to defendant's intent and overall plan to assist the inmates with their escape and to defendant's defense of duress. *See* SCRA 1986, 11–401 and 11–404(B). Here, under the language of the

instructions the jury was limited, in each of the elements instructions for assisting escape, to acts of defendant which occurred on or about July 25, 1987. *See* UJI Crim. 14–2224. However, the jury could properly consider acts and conduct of the defendant occurring after July 25 as they may have related to his intent or overall plans to assist the inmates in making their escape successful. Moreover, in relation to the gun, the trial court specifically cautioned the jury that although the pistol was admitted into evidence, the defendant was not charged with any weapons offenses. Since we have held that the evidence was relevant to the charges against defendant, we find no error in the admission of the exhibits.

(b) After defendant's arrest in Garden Grove, California, on July 31, 1987, he gave an oral statement to FBI Agents Wright and Kinard. In his statement defendant admitted driving from Albuquerque to Santa Fe and taking food to Gallegos, Gilbert, and Kinslow who were hiding in Santa Fe. Defendant also admitted transporting the three inmates from Santa Fe to Albuquerque and securing a motel for them and thereafter driving Gallegos and Gilbert to California.

Defendant acknowledges that Agent Wright advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that he signed a waiver of rights form prior to the time he gave his statement, and that he told the agents that he understood his rights. Defendant does not argue on appeal that any threats or promises were made to him in order to obtain his statements. The trial court determined that defendant's statements were voluntary, and the jury was instructed that before it could consider defendant's statements for any purpose, it must determine that the statements were voluntarily given. Under the facts herein, we find no error in the admission of defendant's statements.

(c) Defendant also argues that the trial court erred in permitting State Police Officer David Osuna to testify concerning oral statements given by Kinslow which were incriminatory of defendant. Defendant asserts that the statement of Kinslow were hearsay and violated his right to confront witnesses called to give testimony against him.

Kinslow gave two statements to Officers David Osuna and Carlos Maldonado in California: the first on August 1, 1987; the second on August 3, 1987. Osuna testified at trial that in both instances Kinslow indicated his wish to make a statement and also that in both instances Kinslow had been given his *Miranda* rights and that he indicated he understood these rights prior to the time he gave any statements.

Osuna testified at trial that the second interview with Kinslow was taped and transcribed and that he, himself, checked the accuracy of the transcript against the tape.

Following Kinslow's arrest in California, the state offered him immunity and agreed not to return him to New Mexico if he gave a truthful statement regarding the circumstances of the escape and testified concerning defendant's role in aiding and assisting the escapees. Kinslow gave a written statement to Officer Osuna; however, Kinslow later recanted the truthfulness of these statements and asserted that they had been extracted by coercion.

At trial Kinslow was called as a witness both by the state and the defense. Officer Osuna testified at trial that Kinslow admitted that defendant had brought food and beverages to the escapees in Santa Fe, had driven them to Albuquerque and secured motel lodging for them, and then had driven Gallegos and Gilbert to California. Kinslow, when called as a witness by the state, refused to testify despite the grant of immunity. Later in the trial, however, Kinslow was called as a witness by defendant and he testified that defendant had not aided or assisted the escapees and denied that defendant had driven the three inmates to Albuquerque. At the time the state offered Kinslow's statements through Officer Osuna, Kinslow was declared to be an unavailable witness because he had refused to testify and had invoked his fifth amendment right to remain silent. Under SCRA 1986, 11–804(A)(2), a witness may be

declared to be unavailable where the declarant persists in refusing to testify concerning the subject matter of a statement despite an order of the judge to do so. In any event, because Kinslow was subsequently called as a witness for the defense and responded to questions about his statement as a witness for the defense, the testimony by Osuna concerning Kinslow's statements was not hearsay. A statement is not hearsay if the declarant testifies at trial, the declarant is subject to cross-examination concerning the statement, and the statement is inconsistent with his other testimony. SCRA 1986, 11–801(D)(1)(a). Under these circumstances we find defendant was not deprived of his right to confront the witness and determine that the statements were properly admitted.

## IV. SUFFICIENCY OF THE EVIDENCE

■ Defendant also challenges the sufficiency of the evidence to support his convictions of assisting escape, reasserting his contention that he was improperly charged with the offenses of assisting escape and that there was no evidence that he knew that Gallegos, Gilbert, and Kinslow were escapees. We have previously addressed defendant's contention that he was improperly charged under Point I of this opinion and found this issue without merit. Additionally, our review of the record confirms that there was substantial evidence on which the jury could properly determine beyond a reasonable doubt that defendant committed each of the offenses of assisting escape.

Following his arrest defendant admitted to Agents Kinard and Wright that he had travelled from Albuquerque to Santa Fe to take food to Gallegos, Gilbert, and Kinslow, that he transported them to Albuquerque, and that he helped them get a motel room there. Defendant was arrested with Gallegos and Gilbert in California, and hotel registration slips corroborated that defendant assisted the defendants in obtaining lodging in Albuquerque and California. Moreover, the statements of Kinslow, related by Officer Osuna, implicate defendant in each of the charges.

Without detailing all of the evidence presented at trial, we have reviewed the evidence and find that substantial evidence exists in the record to support the verdict of the jury on each of the charges against defendant.

## V. DENIAL OF MOTION TO DISMISS

■ Defendant's final point asserted on appeal is that Counts I and II of the indictment should have been dismissed because the harboring statute, Section 30–22–4, provides for the specific exclusion of individuals who are related to a felon by consanguinity or affinity. Defendant argues that because he was the brother-in-law of Gallegos, it was improper to charge him with offenses of harboring or aiding a felon. This argument is without merit because the trial court dismissed each of the counts of harboring or aiding a felon on other grounds. Moreover, nothing in the provisions of Section 30–22–11, the statute on which defendant was convicted, evinces a legislative intent to immunize a defendant from prosecution for assisting the escape of inmates because of consanguinity or affinity. The defenses of consanguinity or affinity recognized under Section 30–22–4 are not applicable to a charge filed under Section 30–22–11.

CONCLUSION

Defendant's conviction and sentences are affirmed.

IT IS SO ORDERED.

HARTZ, J., concurs.

CHAVEZ, J., dissenting.

CHAVEZ, Judge (Dissenting).

It is undisputed that defendant was not present at the time of the breakout from the penitentiary. It is also uncontested that his first contact with the escapees was three weeks after the escape from custody had been effectuated. The state does not claim that defendant in any way planned, assisted or incited the initial departure from custody. By holding that escape is a continuing offense, the majority has imper-

missibly extended the language of the statute defining the crime of assisting escape to include the conduct of defendant. Penal statutes must be strictly construed, and the definition of a crime is not to be broadened. *State v. Collins*, 80 N.M. 499, 458 P.2d 225 (1969); *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967).

Assisting escape is: "intentionally aiding any person *confined or held in lawful custody or confinement* to escape." NMSA 1978, § 30–22–11 (Repl.Pamp.1984) (emphasis added). "Lawful custody or confinement" is "the holding of any person pursuant to lawful authority, including, * * * actual or constructive custody of prisoners temporarily outside a penal institution * * * *" NMSA 1978, § 30–1–12(H) (Repl.Pamp.1984). The storage shed is not a place of lawful custody or confinement and the escaped prisoners were not in the "constructive custody" of law enforcement officials at the time defendant picked up the inmates and drove them to Albuquerque. *See State v. Trujillo*, 106 N.M. 616, 747 P.2d 262 (Ct.App.1987). Thus, although defendant's actions clearly fell outside the scope of the statute, the majority nonetheless brings him within the statute by contending that the *escapees* were still in the process of escaping. Penal statutes should not be subjected to strained or unnatural constructions in order to bring them within conduct not legislated against. *State v. Garcia*, 98 N.M. 585, 651 P.2d 120 (Ct.App.1982).

The majority reasons that since escape is a continuing offense, any person giving assistance to an escapee at any time prior to recapture can be convicted of assisting escape. The policy considerations which define escape as a continuing offense, however, are based on the nature of the crime, the threat posed by an escaped prisoner, and the defenses an escapee can present at trial. Cases holding that escape is a continuing offense have turned on the *escapee's* culpability after the initial breakout from custody, in the context of the defenses of duress, *see, e.g., United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); necessity, *Wells v. State*, 687 P.2d 346 (Alaska Ct.App.1984);

lack of intent to escape, *State v. Burnett*, 292 Minn. 484, 195 N.W.2d 189 (1972); *Parent v. State*, 31 Wis.2d 106, 141 N.W.2d 878 (1966); statute of limitations, *Campbell v. Griffin*, 101 Nev. 718, 710 P.2d 70 (Nev. 1985), *People v. Miller*, 157 Ill.App.3d 43, 109 Ill.Dec. 146, 509 N.E.2d 807 (1987); and in the context of felony-murder, *State v. Milentz*, 547 S.W.2d 164 (Mo.Ct.App.1977). None of these situations apply here. The defendant is not an escaped prisoner. I have found no authority for the conclusion that the continuing nature of the crime of escape should serve to expand statutes defining other crimes such as assisting escape.

While I agree that the very nature of escape makes it a continuing offense *for the escapee*, there is a point at which the escape is complete for the purpose of determining the applicability of our assisting escape statute. Cases dealing with the culpability of one who assists an escapee fall into two categories. The distinguishing factor is whether or not the defendant assisted in the initial departure from custody. *See, e.g., State v. Bishop*, 202 Cal.App.3d 273, 248 Cal.Rptr. 678 (1988) (assisting escape is helping a person in lawful custody to depart from limits of that custody, e.g., diverting suspicion, serving as a lookout, taking charge of an automobile, stopping a guard's attempt to apprehend an escaping prisoner, furnishing information which facilitates an escape, inciting or advising escape by words); *State v. Jones*, 54 Idaho 782, 36 P.2d 530 (1934) (the prisoner was employed outside the jail, in the custody of his supervisor, when defendant gave him money which enabled him to carry out his escape); *Collins v. State*, 174 Ind.App. 116, 366 N.E.2d 229 (1977) (two prisoners took a guard hostage and hijacked a prison vehicle; they later met defendant who arrived with a car and they drove away, thus "completing" their escape); *Suan v. State*, 511 So.2d 144 (Miss.1987) (defendant drove to a work center where prisoner, after leaving the center, entered the car and they drove away; assistance was of sufficient immediacy to fall within assisting escape statute). The common element in all of

these cases is that defendants assisted the prisoners in their *initial departure* from custody or confinement.

This case is more similar to *Orth v. United States*, 252 F. 566 (4th Cir.1918) and *United States v. Vowiell*, 869 F.2d 1264 (9th Cir.1989). In *Orth*, the prisoner escaped and three weeks later appeared at defendant's home. Defendant assisted the prisoner to leave the area. The appellate court found that the evidence did not support a conviction of the charge of aiding an escape. The court held that where physical control has ended by flight beyond immediate active pursuit, the escape is complete. 252 F. at 568. Likewise, the Ninth Circuit in *Vowiell* held that the crime of aiding an escape ends once the escapee has reached temporary safety.

By enacting NMSA 1978, Section 30–22–11 (Repl.Pamp.1984) Assisting Escape, and NMSA 1978, Section 30–22–4 (Repl.Pamp. 1984) Harboring or Aiding a Felon, the legislature has defined two separate and distinguishable offenses, with different elements and penalties. The difference between the two offenses lies in the circumstances under which the assistance is given and in the intent of the individual charged. One distinguishing element is whether the prisoner was in custody at the time aid was rendered; another is the intent of the defendant. The majority, however, has blurred the distinction between these two crimes.

In order to violate Section 30–22–11, the defendant must have incited, supported or reinforced the prisoner's exertions to escape. *See* SCRA 1986, 14–2220, Committee Commentary. The intent is to assist a prisoner in his efforts to leave custody. The crime of harboring or aiding a felon, on the other hand, is committed when a person "knowingly conceals any offender or gives such offender *any other aid,* knowing that he has committed a felony, *with the intent that he escape* or avoid arrest, trial, conviction or punishment." NMSA 1978, § 30–22–4 (Repl.Pamp.1984) (emphasis added). Although under both statutes the intent is to help another in his efforts to escape, in assisting an escape, a defendant intends to aid a prisoner, confined in lawful custody, to depart from the limits of his confinement. One who violates the harboring statute, however, intends to aid a known felon in his efforts to elude the authorities.

The majority argues, in effect, that the continuing threat to society posed by escaped prisoners justifies the convictions of defendant under Section 30–22–11. Under this decision, however, a person who drives a known murderer to another state would be guilty of a lesser crime than one who assists a misdemeanant escapee to leave the county months after his escape. In addition, today's holding removes the consanguinity exception applicable under Section 30–22–4 when a family member helps an escapee. I do not believe the legislature intended these results in enacting Section 30–22–11.

The majority has rewritten the assisting escape statute to include the aiding of any person who *has escaped* from lawful custody or confinement, *to further escape.* This is not our function. It is the legislature's function and prerogative to define crimes. *State v. Moss*, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971). The legislature could very well have determined that the threat posed by one who assists in the initial breakout from custody is much greater than that posed by one who assists an escaped prisoner already at large. Statutes are to be given effect as written and, where free from ambiguity, there is no room for construction. *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977). Defendant did not aid the escape of prisoners who were held in lawful custody contrary to Section 30–22–11. His conduct fell within Section 30–22–4. Because I find the charges of assisting escape improper under the facts of this case, I respectfully dissent.