**Filed 11/7/96**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL R. ROMERO,

       Petitioner - Appellant,

v.

NEW MEXICO, STATE OF;
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

       Respondents - Appellees.

No. 96-2068

D. New Mexico

(D.C. No. CIV-94-0027 JP/WWD)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **LOGAN**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9.  This cause is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a bench trial, Michael Romero was convicted of escape from the Santa Fe, New Mexico penitentiary, aggravated burglary, robbery, false imprisonment, and possession of a firearm by a felon. After exhausting his state court remedies, Romero brought this action pursuant to 28 U.S.C. § 2254, claiming that (1) his attorney's decision to waive his right to a jury trial constituted ineffective assistance of counsel; (2) the evidence was insufficient to support either his conviction for being a felon in possession of a firearm or his sentence enhancement based on the use of a firearm, or his conviction for escape; (3) the delay in bringing him to trial violated the Sixth Amendment guarantee of a speedy trial; and 4) the court's combined errors rendered his trial fundamentally unfair. The district court dismissed the petition with prejudice, which dismissal Romero now appeals. We construe Romero's application for a certificate of probable cause as an application for a certificate of appealability under 28 U.S.C. § 2253(c)(2), and for the reasons stated below, we deny the application and dismiss the appeal.

A. Ineffective Assistance of Counsel.

Romero claims his trial attorney usurped the decision to waive a jury trial, and that if the judge had asked him, he would have stated that he did not agree with the decision. He further claims that "[i]n view of the weak identification evidence in this case, there is a reasonable probability that [he] would have obtained a more favorable outcome had he exercised his right to a jury trial." Appellant's Br. at 11.

To prevail on an ineffective assistance of counsel claim, a defendant must show both that his attorney's representation was so deficient that it was not objectively reasonable, and that his attorney's deficiencies prejudiced his trial. Strickland v. Washington, 466 U.S. 668, 688, 691 (1984). Counsel's advice to waive a jury trial is deficient only if such advice is "completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995), cert. denied, 116 S. Ct. 1881 (1996).

We review de novo the ultimate question of whether a defendant received ineffective assistance of counsel. Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir.), cert. denied, 115 S. Ct. 2591 (1995). However, we give due deference to a district court's findings of historical fact, and we review for clear error its factual findings based on live testimony presented at an evidentiary hearing. Id.

At the evidentiary hearing, Romero's counsel testified that he and Romero had numerous conversations related to the advantages of a bench trial as compared to a jury trial, and that Romero vacillated on the issue. R. Vol. II at 26-29. Counsel testified that he advised waiving a jury trial because he believed a judge would better distinguish the evidence related to the various counts, and that, traditionally in that district, defendants received more favorable sentences from a judge after a bench trial than after a jury trial. Id. at 13-14, 16. Additionally, counsel was concerned about the cumulative strength of the State's evidence and the fact that a jury had previously convicted Romero's

codefendant on all counts.[1]  Id. at 14, 19-21.  According to counsel, Romero told him that he had decided to waive the jury on the day of trial.  With Romero in the courtroom, counsel so advised the court.  Id. at 26-28.

In fact, the bench trial resulted in Romero's conviction of simple robbery rather than armed robbery, which reduced his sentence by nine years; and, at sentencing, the judge ran the habitual offender enhancements concurrently rather than consecutively.  Id. at 30.  Moreover, Romero's own testimony supports his knowing waiver:  "Well, you know, the trial was being held in Santa Fe County, and I felt I would have been prejudiced.  I had a jury trial, [before], you know.  I felt everybody might have been negative toward me, so that's why I went ahead and went with a bench trial."  Id. at 41. Based on the live testimony and his review of the parties' submissions, the magistrate judge found that Romero's waiver was, in fact, knowing and voluntary, that counsel's recommendation was reasonable, and that Romero showed no prejudice.[2]  R. Vol. II at 48. We agree.

---

[1]A mistrial was declared as to Romero when he fired his first attorney in open court during that previous jury trial.  See R. Vol. II at 29.

[2]Romero's conclusory claim that the identification evidence was weak has no merit.  Although neither victim saw his face, they described his clothing (military camouflage), which he was still wearing when apprehended, and one of the victims identified him by his clothing.  State R., Trial Tape 2.  The arresting officer testified that (1) he observed Romero jump from the truck which had been stolen from the victims, and (2) a wallet, keys, and other items which belonged to one of the victims were found on Romero's person.  Testimony of Officer John Garcia, Id.,Tape 6; Testimony of Roman Duran, Id., Tape 2.  Additionally, the associate warden testified as to his identification of Romero at the scene.  Testimony of Mr. Mier, Id. Tape 6.

B.  <u>Evidence</u>.

Romero contends that the evidence was insufficient to support his firearm

conviction, his sentence enhancement, and his escape conviction.  Whether the evidence

is sufficient is a question of law which we review de novo.  United States v. Johnson, 57

F.3d 968, 971 (10th Cir. 1995).  "Evidence is sufficient to support a criminal conviction if

a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the

direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a

light most favorable to the government."  United States v. Clark, 57 F.3d 973, 976 (10th

Cir. 1995) (quoting United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994)).


1. Felon in Possession of a Firearm.  In order to convict him of possession of a

firearm by a felon, the State needed to prove that Romero possessed a firearm.  Although

he concedes that two officers testified that they observed him carrying a .357 magnum

revolver, Appellant's Br. at 8, Romero contends that the State was also required to

produce the firearm, and that its reliance on a photograph was insufficient.

Our review of the record reveals the following evidence:  Officer Eugene Garcia

testified that he arrived to find Officer John Garcia holding Romero "at bay," face down

on the ground, that he observed a gun strapped to Romero's side, and that he disarmed

Romero.  Officer John Garcia testified that he also observed Romero with a gun, and that

he inventoried that gun, which was the same brand and caliber as the one shown in the

photograph which was admitted into evidence over defense objection.[3] State R., Trial Tape 6. We conclude that the officers' testimony, viewed in the light most favorable to the government, was sufficient to support a conviction for possession of a firearm by a felon.

2. Sentence Enhancement for Use of a Firearm During Aggravated Burglary. Romero complains that the evidence was insufficient to enhance his burglary sentence for using a firearm, since it was his codefendant who carried the gun. However, New Mexico courts have ruled that an accessory's sentence may be enhanced in just such a situation, where a firearm was used only by the principal. State v. Burdex, 668 P.2d 313, 317 (N.M. Ct. App. 1983); see also N.M. Stat. Ann. §§ 30-1-13, 31-18-16. Thus, Romero's narrow insistence that the victims' testimony points to his codefendant as the person who carried the gun fails. Under New Mexico law, that testimony was sufficient to support his sentence enhancement.

3. Escape. Romero contends that his uncontroverted evidence proved a duress defense on the escape charge. Under New Mexico law, duress is a valid defense to an

---

[3]The officer could not identify the gun more specifically since the serial number was not visible in the photo. Because the officer who took the photograph had not been called to testify, the State could not otherwise establish a proper foundation for the photograph.

escape charge, if the defendant feared immediate great bodily harm and a reasonable person would have acted in the same way.[4]  State v. Norush, 642 P.2d 1119, 1122 (N.M. Ct. App. 1982); Esquibel v. State, 576 P.2d 1129, 1130 (N.M. 1978).  However, an escapee relying on a duress defense must report "'immediately to the proper authorities when he attain[s] a position of safety from the immediate threat.'"  State v. Martinez, 781 P.2d 306, 309 (N.M. Ct. App. 1989) (quoting New Mexico Supreme court approved instruction SCRA 1986, 14-5132).  That is, "'there must be evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress has lost its coercive force.'"  Id. (quoting Committee Commentary to SCRA 1986, 14-5132).

Evelyn Dionesio testified that Romero made four or five calls to her in the early morning hours following the escape, telling her that he had escaped because he feared for his life during the riot, and that he intended to turn himself in if Dionesio and his mother could meet him.  State R., Trial Tape 8.  However, she also testified that she waited by her phone day and night for a promised further call which never came.[5]  Id.  Contrary to Romero's claim, Dionesio's testimony does not prove a bona fide effort to surrender.

---

[4]Apparently, Romero contends that the evidence was insufficient to convict him in light of his duress evidence.

[5]Additionally, the associate warden testified that Romero had altered his appearance by dying his hair.  State R., Trial Tape 3.

Whether his escape was opportunistic[6] or planned, Romero's failure to follow through his claimed intent to turn himself in is fatal to his duress defense, especially since escape is a continuing offense. Martinez, 781 F.2d at 309. We conclude that the evidence clearly demonstrated that Romero escaped, and his duress defense was inadequate in fact and law.


C. Sixth Amendment Speedy Trial. Approximately twenty-five months elapsed between the day that Romero was indicted and the day that his trial began. Romero contends that such a delay violates his Sixth Amendment right to a speedy trial.

We review de novo a claimed violation of the Sixth Amendment right to a speedy trial. United States v. Dirden, 38 F.3d 1131, 1135 (10th Cir. 1994). In making our determination, we look to (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice from the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972).

Romero's trial was originally set for April 11. The State's motion to extend that date shows a reasonable basis and good cause. See State Court R. at 60-61; 64. The reasons and parties responsible, and the relevant orders for some other extensions which the parties recite are not apparent from the record, although we note that Romero was

---

[6]Robert Davis, one of the other inmates who escaped, testified that Romero was not in on the escape plan, and Davis spoke about unsafe conditions at the prison. State R., Trial Tape 7.

attempting to discharge his attorney around the time that trial was first reset.[7]  See id.,

handwritten note from Romero to Judge Encinias, filed April 11; typewritten letter dated

June 11, 1988 (page numbers illegible).  Additionally, Romero had obtained a late order

allowing discovery.  Id., Order filed June 15, 1988.  The record does reveal that on July

11, 1988, the New Mexico Supreme Court granted the State's request for an extension,

setting a new deadline for trial commencement at January 14, 1989.[8]  Id. at 339.

The trial commenced on January 11, 1989.  By the second day, Romero created a

mistrial by firing his attorney in open court.  Id. at 581-82.  Thereafter, the record reveals

two extensions related to a joint motion and to the State's petition to the Supreme Court.

Id. At 851, 927.  Although the reasons and party responsible for other extensions are not

documented,[9] the record reveals that Romero's second attorney withdrew because of a

---

[7]In connection with his attempt to dismiss his first attorney, Romero specifically waived the New Mexico "Rule Date," and indicated that he agreed to all previous extensions requested by the State.  See State Court R., Romero pro se Reply (June 17, 1988) (page number illegible).

[8]Rule 5-604 C of the New Mexico Rules of Criminal Procedure for the District Courts provides that the Supreme Court may extend the time for commencement of trial "for good cause shown."  The rule further provides that a party opposing an extension may object.  Romero has pointed to no objection to any extension request.

[9]The State's brief refers to record pages 1003 and 1007 which were not transmitted to us.  According to the State, those pages demonstrate that Romero sought the last extension after his third attorney was appointed.  Since we cannot verify this assertion, we do not consider it in our determinations.

deteriorating attorney-client relationship,[10] a third attorney was then brought in, and the assigned trial judge recused himself during this time. Id. at 918, 925-26, 938-39, 1001.

Even if a two year delay were presumptively prejudicial, Romero has failed to show that the reasons for the delay were not reasonable. In fact, the record indicates that Romero either agreed to or necessitated much of the delay. Moreover, Romero did not demand a speedy trial, and he has shown no prejudice caused by the delay. Accordingly, his Sixth Amendment right to a speedy trial was not violated.

D. Cumulative Error. Romero claims that the trial court consistently demonstrated bias against him, and that the judge's failure to act as an impartial decision maker deprived him of due process. In addition to his claims which we have already rejected, Romero points to the court's denial of motions for severance and for change of venue as evidence of bias.[11] In order to prevail on his claim of cumulative error, Romero must show actual individual error. Odum v. Boone, 62 F.3d 327, 329 n.1 (10th Cir. 1995). Inasmuch as Romero has not shown individual error,[12] his claim of cumulative error fails.

---

[10]The State opposed Romero's attempt to discharge his second attorney, calling it a "delaying tactic." State R. at 921.

[11]In fact, Romero's mistrial effected a severance. Thereafter, Romero's trial was conducted before another judge.

[12]Under New Mexico law, motions for severance and for change of venue are addressed to the sound discretion of the trial court. See State v. Hovey, 742 P.2d 512, 515 (N.M. 1987); State v. Gunthorpe, 469 P.2d 160, 165-66 (N.M. Ct. App. 1970).

(continued...)

For the reasons stated, Romero has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c). Accordingly, we DENY his application for a certificate of appealability and DISMISS his appeal.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[12](...continued)
Romero's bare allegation fails to show any abuse of discretion.