No. 30,783.

THE STATE OF KANSAS, *Appellee*, v. DAYTON THOMAS, *Appellant*.

(15 P. 2d 723.)

Opinion filed November 5, 1932.

*James F. Getty, George H. West* and *O. Q. Claflin, Jr.,* all of Kansas City, for the appellant.

*Roland Boynton,* attorney-general, *Frederick R. White,* county attorney, and *Lee E. Weeks,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from a conviction of murder in the second degree and sentence pronounced thereon. The

information charged murder in the first degree, and the court instructed upon both degrees and upon all the degrees of manslaughter.

Many errors are assigned; some of them are concerning the instructions given, one concerns the refusal of the court to sustain the motion to discharge the defendant for want of evidence, direct or circumstantial, or some of the essential elements of the crime, but most of them are because of the fact that there was no eye-witness to the shooting. A very serious question is involved as to an instruction concerning admissions said to have been made by counsel for defendant in his opening statement to the jury, which was made before any evidence had been introduced by the state, contrary to the order of trial prescribed by R. S. 62-1438. The record shows that the defendant's counsel elected to make the opening statement before the introduction of the state's testimony. At the close of the state's testimony the defendant moved to discharge the defendant because the state had failed to prove facts sufficient to constitute an offense under the information. The court overruled this motion, and in doing so took into consideration some of the statements made by defendant's counsel in his opening statement to the jury as admissions of fact. After this ruling on the motion the defendant rested without introducing any evidence whatever, the jury was then instructed, arguments were made, and a verdict was rendered of murder in the second degree.

Appellant objects to the taking of any of his counsel's opening statement to the jury as testimony in the case, and insists if any part of the statement is taken the whole of the sentence or statement on that subject should have been taken together. There were two persons killed in this connection, but the information in this case only charges defendant Thomas with the killing of McNally. The opening statement as to the shooting of the other man is necessary to get the connection with what is said to have followed, and is as follows:

"The evidence will show that as Thomas started to step out of the car, I don't know whether he stepped on the running board or not, a man, he didn't know then who it was, got out of this car and started across the street toward the car that Dayton Thomas was in, and as he got to Dayton Thomas he threw a gun down on him, and said, 'Stick them up.' The evidence will show that Thomas reached in and grabbed his gun and fired twice. As he fired, this man throwed his hands up this way (indicating) and as he did, the gun went back of him and dropped on the pavement."

The part of the statement concerning the shooting of McNally was as follows:

"The evidence will show that when Mr. Thomas got in the car, and sat down on the seat, McNally suddenly struck him in the face and that Thomas, the evidence will show, had had no controversy with Mr. McNally and he said to McNally, 'What in the hell do you mean?' McNally then caught him and beat him in the face—the door still loose and swinging, and at that time, Dayton Thomas, who as he ran after the car dropped his gun in his pocket— Thomas grabbed his gun, and believing that he was going to be thrown from the car and going to be hurt, shot, and he shot McNally."

A later part of the statement is as follows:

"The evidence will show he went on up to the house where he boarded with Mrs. Thomas, opened the door, went in, and she noticed his condition, noticed the blood on him, the abrasion and cuts on his chin and that she asked him what was the matter, and he said, 'Two men tried to hold me up and I shot them.'"

Appellant calls our attention to the opening and closing paragraphs of his opening statement to show that he was not referring to the evidence of the defendant in the case alone and what it would prove, but to all the evidence on both sides—these paragraphs, the first and last, are as follows:

"The evidence in this case—and I don't say evidence on behalf of the defendant alone, but I say the evidence in this case, both on the part of the state and on the part of the defendant, will show several things that I want to call your attention to."

"Now, then, under the evidence and under the instructions of the court as to a man's right of self-defense, and under the instructions of the court as to a reasonable doubt and to resolve that doubt in favor of the defendant, if the evidence in this case both on behalf of the state and on behalf of the defendant should show facts as I have detailed them to you, we will expect at your hands a verdict of not guilty on behalf of this man, Dayton Thomas."

The trial court instructed the jury that the opening statement of counsel for defendant relieved the state from proving the presence of the defendant at the time and place of the alleged shooting and also proof of firing of the revolver at the deceased. This is particularly assigned as error. The argument made against it is that this was not evidence and was only a part of the statement, and if any of it is to be taken and used as evidence, the entire statement should be so considered. On the other hand, the state maintains that the part taken is made admissible by being against interest while the other part was self-serving. The two instructions given in relation thereto are as follows:

"In a previous instruction, I have told you, that under certain circumstances homicide is justifiable.

"If, from all of the evidence in this case, and the reasonable inferences which you draw therefrom, you cannot determine beyond a reasonable doubt, that the defendant did not fire the shot at the deceased while he, the defendant, was being assaulted by the deceased under such circumstances as caused the defendant to believe that he was in danger of death or great bodily harm immediately, and that he shot in good faith to protect himself therefrom, you cannot find the defendant guilty.

"The state has not offered any evidence to show that the defendant shot and killed the said John McNally. Counsel for the defendant has, however, in open court stated that the defendant shot at the said McNally and that such shooting was done in self-defense. This statement by counsel of defendant relieves the state from proving the presence of the defendant at the time and place of the alleged shooting, and, also, proof of firing of the revolver at the deceased. This statement, however, does not admit that the shot fired by the defendant was fatal and caused the death of John McNally, nor that the defendant willfully, maliciously, deliberately and intentionally shot and killed the said John McNally, nor does it admit that the shooting was unlawful; neither does it admit that the defendant was not justified in firing at the deceased.

"Counsel for the defendant admits that the defendant was present at the place in question and that he fired the shot, but does not admit that if death resulted from the shot, that the killing was unlawful; the burden of proof rests upon the state, as hereinbefore instructed, to establish to your satisfaction beyond a reasonable doubt, that the killing was unlawful and that the defendant is guilty of some one of the offenses included in the charge made in the information, as hereinbefore explained to you.

"Therefore, unless you find that the state has so proven the charge included in the information you should find the defendant not guilty."

Counsel for the state cite *State v. Truskett*, 85 Kan. 804, 118 Pac. 1047, as decisive, but while it concerns the consideration of statements made by defendant's counsel in his opening statement as evidence in the case, yet there was evidence covering the same points regularly admitted, and the trial court instructed the jury "to entirely disregard such unsupported statement of counsel." It was a case where there were no eye-witnesses, and the defendant's attorney in his opening statement told what was said and done in the closet leading up to the shooting. But this was corroborated by one witness at the store of the defendant's nephew where the defendant went immediately after the shooting and there said, "I have shot Neely. I had to do it." He told the sheriff exactly the same thing a few hours later, and both these statements were regularly introduced in evidence. The trial court ruled the first statement at the

store could only be considered as it might have a bearing upon the mental condition of the defendant, but put no such limitation upon the statement to the sheriff. It was said in the opinion:

"It is true that part of the remark was self-serving, but it was a part of one statement, offered we must presume, as an admission tending to prove guilt, and must be considered as a whole and its effect left to the jury. . . . It is true the jury might have believed the first part and rejected the last part of the statement, but it was their province to do so and not that of the court." (p. 816.)

The error in that case was in failing to give to the jury the consideration of the self-serving part of the statement as well as that against interest and let the jury decide whether the killing was done in self-defense. The trial court in the case at bar avoided that error by instructing the jury as to self-defense. The reference to the opening statement in the Truskett case, *supra*, is of no particular consequence or help in this case because the trial court in that case told the jury to entirely disregard such unsupported statements of counsel, and without it the jury had the statement made by the defendant himself to the sheriff that "I have shot Neely. I had to do it."

The state refers to a part of the opinion in the case of *State v. Jackson*, 42 Kan. 384, 22 Pac. 427, where the court speaks of a fact being admitted in a criminal case so that it is no longer a question of fact where "the entire uncontradicted evidence in the case might clearly, unquestionably, conclusively and directly prove the same." But the admission there spoken of was the kind to be based upon the uncontradicted evidence. There was no actual admission in that case. The admission claimed was an essential element of the crime and was denied by the plea of not guilty.

The case of *State v. Wilson*, 166 Ia. 309, is cited by the state to show the defendant may be bound by the admissions of his attorney in his opening statement. The essential element of the crime under consideration there was that death resulted from the wounds inflicted by the shots. The attorney said:

"They have doctors to prove to you that a woman was shot and killed. We know it. What do they need that evidence for? We admit that the woman is dead, and that those shots killed her. A fact is a hard thing to get away from." (p. 325.)

The supreme court recognized the statement as an admission and the right to regard it as such, but the closing sentence on this point in the opinion shows that there must have been some evidence on the

subject in addition to the attorney's statement, as it refers to "circumstances proven." The concluding sentence is as follows:

"In thus disposing of the point raised, it is not to be assumed that we entertain any doubt as to the sufficiency of the circumstance proven to warrant the inference that death resulted from the wounds inflicted by the shots from the revolver." (p. 326.)

Of course counsel for the defendant in a criminal case may, in the course of the proceedings, make an admission of fact voluntarily and purposely to avoid the necessity of proving it, and the court has a perfect right to accept such as an admitted fact for which no proof will be necessary. Such admission, however, is properly made to the court and a record is made of it as such. Then the court conveys to the jury such admission, through its instructions, and it becomes a judicial admission.

"The admissions of attorneys of record bind their clients in all matters relating to the progress and trial of the cause; but, to this end, they must be distinct and formal, or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice, or of dispensing with the formal proof of some fact at the trial . . ." (1 Greenleaf on Evidence, 16th ed., 311.)

In criminal cases, more particularly than in civil, the defendant is protected against any and every statement of his counsel which is not definitely and purposely intended as and for an admission.

"A statement made by counsel in open court which is not in fact an admission cannot be treated as one. Admissions made by counsel in argument do not take the place of testimony, nor can a conviction be based thereon . . ." (16 C. J. 639.)

"A conviction of accused cannot be had upon the admissions of criminality made by his counsel not constituting a plea of guilty." (16 C. J. 760.)

In the case of *State v. Wheeler*, 93 Wash. 538, the defendant was being prosecuted for adultery, and the statement of defendant's counsel as to a party being a justice of the peace in connection with a marriage ceremony was used where evidence was lacking, and the judgment was reversed on that account, the court saying:

"The statement of counsel does not admit that Maaker was a justice of the peace at the time, and was not made as an admission. It was a mere voluntary statement, suggesting that, at one time, Maaker was a dentist and a justice of the peace. An admission by an attorney to be binding upon his client must be distinct and formal, and made for the express purpose of dispensing with the formal proof of some fact at the trial." (p. 541.)

In the case of *Sanderson v. State*, 44 S. W. (Tex.) 1103, the court instructed the jury as follows:

" 'The defendant's counsel . . . in his plea and argument, admitted that defendant had the pistol, and defendant was present at the time.' " (p. 1103.)

The judgment was reversed with the following comment:

"This charge assumes: First, that the defendant carried the pistol in violation of law; second, it places the burden upon the defendant to justify such unlawful carrying. It would be a very dangerous precedent to authorize a jury to convict a defendant for any admissions that might be made by his counsel in argument." (p. 1103.)

We conclude in the same way, that it would be a very dangerous precedent to authorize a jury to convict one charged with a crime upon the admissions his counsel made in an opening statement which were unsupported by evidence regularly introduced. All the authorities found on the subject impress us that a solemn admission, intended to be binding upon one charged with a crime, should be made other than in an argument or address to a jury, and because the court accepted such statements as admissions against interest and separated them from the self-serving statements with which they were connected, we think it was error. Other assignments of error need not be here considered. The one considered requires a reversal and the granting of a new trial. It is so ordered.