JUDITH A. COLLINS *v.* STATE OF INDIANA

[No. 2-176A19. Filed August 25, 1977. Rehearing denied November 10, 1977.]

*William C. Erbecker, James Manahan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Arthur,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

BUCHANAN, J.—Defendant-Appellant Judith A. Collins (Collins) appeals from a conviction in a bench trial of Aiding Escape of a Prisoner,[1] claiming the evidence is insufficient to show she had the requisite knowledge that Turner Lee Boles was a prison escapee.[2]

We reverse.

## FACTS

The evidence most favorable to the State reveals the following:

On April 21, 1975, Ronald Wentland, an officer of the Indiana State Prison, escorted Gilbert Beck, an inmate of the prison, to Robert Long Hospital in Indianapolis for treatment of hypertension. Another inmate, a trusty, Turner Lee Boles, acted as driver.

After leaving the hospital to return to the prison, Beck who was sitting in the back seat, grabbed Wentland from behind. Boles seized Wentland's weapon and gave it to Beck. Boles and Beck continued to drive around Indianapolis for some time with their captive.

After several stops to make telephone calls, Beck told Boles that he would be able to get another car.

The convicts proceeded with their captive to Leonard Street. They parked in an alley opening onto Leonard near its intersection

---

1. IC 35-1-96-3.

2. Because we reverse on this issue, it is unnecessary to consider Collins' other allegations of error.

with Minnesota Street. Beck got out of the car and went to the corner of Leonard and Minnesota. He motioned to Boles who left the car and Officer Wentland in the alley. Both men got into a blue Mustang parked by the curb on Minnesota. A young blond woman (Collins) approached, got into the driver's seat and drove the car away.

Collins was charged with Conspiracy to Commit a Felony towit: Escape from Prison and Aiding the Escape of Prisoner.[3]

## ISSUE

The sole issue is:

Was there sufficient evidence of probative value to permit the trier of fact to conclude beyond a reasonable doubt that Collins knowingly aided in the escape of Boles?[4]

PARTY'S CONTENTIONS—Collins contends there is no evidence tending to show she knew Boles was a prison escapee.

The State simply counters that the evidence was sufficient to allow a reasonable inference that Collins knew he was an escaped prisoner.

## DECISION

CONCLUSION—There was insufficient evidence introduced at trial to establish that Collins knew Boles was an escapee.

Collins was convicted under this statute:

35-1-96-3
Sec. 3 Whoever, not being a person having the lawful custody of any prisoner charged with or convicted of a felony, shall aid in or accomplish the escape of such prisoner, shall, on conviction, be imprisoned in the state prison not less than two (2) years nor more than twenty-one (21) years. (hereinafter Statute)

At trial, a witness positively identified Collins as the driver of the blue Mustang which picked up the escaped prisoners. The same witness positively identified photographs of the two escapees as those he saw on the day of the escape.

---

3. The conspiracy charge was dismissed at the end of the State's evidence.

4. The Information charges Collins only with aiding Boles in his escape, not Beck and Boles.

The Information charged Collins with aiding in the escape of prisoner Turner Lee Boles. The State admitted into evidence the commitment papers of prisoner Boles showing that he was in the custody of the State of Indiana and that he had committed a felony. Thus it appears the State adequately established the elements of the crime set out in the Statute . . . all, says Collins, except knowledge on her part that Boles was an escaped convict. Such knowledge must be established by the State beyond a reasonable doubt in order to show criminal intent. *State v. Sutton* (1908), 170 Ind. 473, 84 N.E. 824.

Knowledge may be inferred from evidence of circumstances surrounding the commission of the crime. However, an inference cannot be based on evidence which is uncertain or speculative or which raises merely a conjecture or possibility. *Serrano v. State* (1977) 266 Ind. 126, 360 N.E.2d 1257; *Shutt v. State* (1954), 233 Ind. 169, 117 N.E.2d 892; *Johnson v. State* (1926), 199 Ind. 73, 155 N.E. 196.

Officer Wentland testified that Beck left the car to make a phone call. When he returned he said to Boles, "They'll get us the car." Soon after, the two drove off with Collins.

It is reasonable to infer that Collins came to pick up Boles and Beck in response to Beck's phone call. However, in the absence of any other evidence linking her to the two, it is mere conjecture to assume she came knowing them to be escapees.

The State claims that such knowledge can be inferred from the "fact" that Collins is the sister of Gilbert Beck, and the "fact" that she had visited both in prison. We agree that *had* these facts been established at trial, evidence of knowledge would have been sufficient. However, a careful search of the record reveals no such evidence.

At the trial, the State presented and had provisionally admitted into evidence prison visit logs of Gilbert Beck and Turner Lee Boles. Each had a notation which showed a 1973 visit from a Judy Beck. However, at no time did the State present any evidence which established a link between the Judy Beck who visited the

escaped prisoners in prison and the Judith A. Collins on trial for
aiding in their escape. Nor was any evidence presented showing
Collins was the sister of Gilbert Beck.

Although it is apparent from the record that everyone including
the judge assumed that Judith A. Collins is the Judy Beck on the
visitor's log, we find *no evidence* in the record to that effect.

The only part of the record which tends to connect Judith A.
Collins with Judy Beck, whose name appears on the visit logs, is
defense counsel's argument in support of his Motion for Judg-
ment on the Evidence at the end of the State's case, in which he
alluded to Beck as Collins' brother and Boles as being in-
carcerated with Beck.[5]

Such an inadvertent admission made by counsel in the heat of
argument does not fill the void in the State's case.[6] An admission
must be an intentional act of waiver--not merely assertion or

---

5. Yes, Your Honor, the Defendant, Judith Collins, respectfully moves the
Court for a finding of not guilty and a finding of not guilty and for a discharge
because of the insufficiency of the evidence in that first, it fails to establish that
she aided, abetted, counseled or commanded or conspired in any way with the, in
this cause under which she is being charged, secondly, assuming arguendo but
not conceding that she was identified, by somebody after the commission of the
crime, after the episode out at the hospital, assuming, but not conceding she was,
that does not in any way prove that she aided or abetted, and as I understand
from the memorandum that they very graciously provided me today, a few
minutes ago, that, and from my talking with Mr. Ackerman, that the evidence
connecting her, if it could be deemed evidence and not assuming that it is, but for
the sake of discussion that it was, she visited the person who escaped about two
years prior to this episode out there at the instance of her brother, who is an in-
mate at Michigan City also. And that assuming that she did meet with two men,
but not conceding that she did, but assuming that she did, the evidence indicates
from the memorandum and what Mr. Ackerman told me, they were not in prison
garb, they were dressed like any other people on the street, I think it was at
night, and there was no evidence that she knew who they were, and you can't
guess a person into prison . . . From my meager, very meager knowledge of it,
and from what Mr. Ackerman tells me and from this memorandum, the con-
spiracy would be, from the record and from what Mr. Ackerman told me, her
meeting this man at the invitation of her brother two weeks, or two years prior
to this episode out at the hospital, and just merely talking with a person falls far
short of a conspiracy charge, if there is enough for a conspiracy, if a two year
later meeting is the overt act, it's kind of far-fetched, because the only act as I
get from the record, and I'm poorly equipped to even argue this case because I
wasn't here, but I roughly went over that, and talked to the, Mr. Ackerman, and I
can't see any evidence of a conspiracy whatsoever other than the chance meeting
up at the Indiana State Prison where her brother was incarcerated with Boles.

6. An attorney of record has the authority to admit a fact (stipulate) in the
course of a trial for the purpose of obviating the need to prove it even though the

concession made for some independent purpose. 9 J. WIGMORE, A TREATISE ON EVIDENCE § 2594 (3d ed. 1940).

Improvident or erroneous statements or admissions resulting from unguarded expressions or mistake or mere casual remarks, statements or conversations are not generally treated as judicial admissions presented for the purpose of dispensing with testimony or facilitating the trial. 7 C.J.S. ATTORNEY AND CLIENT § 100 (1937).

As the Court pointed out in *State v. Thomas* (1932), 136 Kan. 400, 405, 15 P.2d 723, 725-26, it is particularly important in a criminal case that the defendant be protected from inadvertent slips of the tongue of his attorney:

> Of course counsel for the defendant in a criminal case may, in the course of the proceedings, make an admisson of fact voluntarily and purposely to avoid the necessity of proving it, and the court has a perfect right to accept such as an admitted fact for which no proof will be necessary. Such admission, however, is properly made to the court and a record is made of it as such. Then the court conveys to the jury such admission, through its instructions, and it becomes a judicial admission.

> "The admissions of attorneys of record bind their clients in all matters relating to the progress and trial of the cause; but to this end, *they must be distinct and formal,* or such as are termed solemn admissions, *made for the express purpose of alleviating the stringency of some rule* of practice, or of dispensing with the formal proof of some fact at the trial * * * " (1 Greenleaf on Evidence, 16th Ed. 311.)

> In criminal cases, more particularly than in civil, the defendant is protected against any and every statement of his counsel which is not definitely and purposely intended as and for an admission. (Emphasis supplied.)

Thus, the informal, inadvertent admissions made by Collins' counsel for another purpose, cannot be recognized as evidence of facts on which his client's guilt could be based.

We therefore necessarily hold that the record reveals insufficient evidence from which knowledge could be attributed to Collins that Boles was an escapee.

---

fact admitted is against the defendant's interest. See 3 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 707 (13th ed. 1973).

Because Collins' assertion that she could not have aided in the escape of Boles because the escape was complete at the time the two grabbed the prison guard and took control of the automobile is likely to arise in a new trial, we consider that question here.

Until the two escapees drove away in the blue Mustang, they were hindered by an identifiable prison automobile and had a prison guard as hostage. Although the guard was restrained, there was still the risk that he might regain control. Whether knowingly or not, Collins provided the means by which Boles effectively separated himself from the guard's restraint and completed his escape.

Reversed and remanded for a new trial.

White, J. and Robertson, C.J. (by designation) concur.

NOTE—Reported at 366 N.E.2d 229.

## ON PETITION FOR REHEARING

BUCHANAN, J.—The State of Indiana filed a Petition for Rehearing on September 13, 1977, to our decision in *Collins v. State* (1977), 174 Ind. App. 116, 366 N.E.2d 229, rendered August 25, 1977.

The State erroneously contends in its Petition that the case of *State v. Sutton* (1908), 170 Ind. 473, 84 N.E. 824, holds it need not be proved that an accused knows he is aiding an escaping prisoner.

This case merely holds that if the facts stated in the affidavit could give rise to an inference of guilty knowledge,--for example, that the prisoner was clearly in the custody of a sheriff or policeman--a motion to quash the affidavit should not be sustained.

By re-examining the record we have reinforced our conclusion that the State offered no proof that the defendant, Judith A. Collins, knew she was aiding escaping prisoners. The connection between Judith Beck whose name appeared on the prison visit logs and Judith A. Collins, the defendant, was never made by the State at Collins' trial.

Other than the inadvertent reference by counsel to Beck as Collins' brother, the only possible link between the two revealed in the record is a bail application in which the name Beck appears. However, this document was never introduced into evidence nor is there any indication in the record that the trial judge took judicial notice of it.

Petition for Rehearing denied.

White, J. concurs.

Robertson, C.J. (by designation) concurs.

NOTE—Reported at 369 N.E.2d 426.