FILED

May 23 2016, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANT PRO SE

James E. Saylor
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Saylor,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 23, 2016<br><br>Court of Appeals Case No.<br>39A05-1503-PC-113<br><br>Appeal from the Jefferson Circuit Court<br><br>The Honorable Jon Webster,<br>Special Judge<br><br>Trial Court Cause No.<br>39C01-1404-PC-315 |

**Vaidik, Chief Judge.**

# Case Summary

[1] James E. Saylor was convicted of molesting his stepdaughter, pled guilty to being a habitual offender, and was sentenced to 138 years. We affirmed on direct appeal. Saylor then sought post-conviction relief raising numerous issues, including that his trial counsel was ineffective for conceding his guilt to two counts of Class A felony child molesting during closing argument and that his guilty plea to the habitual-offender charge was not knowing, voluntary, and intelligent because he did not personally waive his right to a jury trial.

[2] As for Saylor's ineffective-assistance claim, Saylor's defense at trial was that he did not commit the crimes, and defense counsel consistently argued this during closing argument. Nevertheless, in making a point about the State's medical evidence, defense counsel inadvertently said that Saylor "was not the only person that was having sex with" the victim. Given Saylor's consistent defense and the fact that the State did not capitalize on this statement during its rebuttal argument, we find that defense counsel's inadvertent statement, although a mistake, was not a judicial admission to two counts of Class A felony child molesting. And in light of the overwhelming evidence of Saylor's guilt, we find that there is not a reasonable probability that, but for defense counsel's mistake, the result of the proceeding would have been different.

[3] As for Saylor's argument that he did not personally waive his right to a jury trial on the habitual-offender charge, the Indiana Supreme Court recently reaffirmed the personal-waiver requirement when a defendant proceeds to a bench trial in

*Horton v. State*, No. 79S02-1510-CR-628 (Ind. Apr. 21, 2016). Although this case involves a guilty plea—and not a bench trial like in *Horton*—and there is a different statute that governs guilty pleas, we find that the same rationale applies when a defendant waives his right to a jury trial when pleading guilty. Accordingly, because Saylor did not personally waive his right to a jury trial— rather, his attorney did—when he pled guilty to being a habitual offender, we vacate his habitual-offender adjudication and remand for a new trial on that charge. We affirm the post-conviction court on all other issues that Saylor raises.

# Facts and Procedural History

[4] In April 2005, Saylor moved into a home in Madison with his wife ("Wife") and four children. B.D., then a ten-year-old girl, and M.D., then a thirteen-year-old boy, are Wife's children from a previous relationship. J.M.S. is Saylor's son from a previous relationship and was approximately eighteen years old. J.S., who was seven years old at the time, is the only child Saylor and Wife have together.

[5] Over a period of approximately eighteen months, Saylor forced B.D. to have sexual intercourse and oral sex with him, forced M.D. and B.D. to have sexual intercourse and oral sex with each other while Saylor watched, and taught B.D. to have sex with the family dog. Saylor threatened to harm B.D. if she told anyone what was happening. But in July 2006, when B.D. was eleven years old, she told a family friend, Jasmine Mardello, who notified the Indiana

Department of Child Services. Saylor was arrested the next day. Kathy Scifres, a forensic-nurse examiner, conducted a physical examination of B.D. The State ultimately charged Saylor with two counts of Class A felony child molesting (both involving B.D.), Class B felony vicarious sexual gratification (based on Saylor forcing B.D. to engage in sexual intercourse with M.D.), Class D felony intimidation (based on Saylor's threats to B.D. if she told anyone), and being a habitual offender.

[6] A jury trial began in August 2007. The trial was bifurcated, with the first phase addressing the child-molesting, vicarious-sexual-gratification, and intimidation charges, and the second phase addressing the habitual-offender charge.

[7] During the first phase of trial, B.D., M.D., and J.S. all testified that Saylor had sexual intercourse with B.D. and forced M.D. to have sexual intercourse with B.D. Mardello testified about B.D.'s initial disclosure to her, and Scifres testified about her physical examination of B.D., which revealed a healed vaginal tear and hymenal thinning that was consistent with the penetration of her vagina by a blunt or round object, such as a penis. Scifres also testified that B.D. told her that she had sexual intercourse with Saylor but that B.D. did not tell her that she had sexual intercourse with anyone else.

[8] During closing argument, defense counsel argued that the State's medical evidence did not prove that Saylor molested B.D. because B.D. had sexual intercourse with other people, and they could have caused her injuries. As part

of defense counsel's lengthy argument on this point, he said, "Mr. Saylor was not the only person that was having sex with [B.D.]." Tr. p. 908.

[9] The jury found Saylor guilty of the child-molesting, vicarious-sexual-gratification, and intimidation charges. While the jury was in the jury room waiting for the habitual-offender phase of trial to begin, Saylor's trial counsel requested a brief recess to discuss the habitual-offender charge with Saylor. At the end of the recess, defense counsel told the trial court that Saylor had decided to plead guilty.

[10] At sentencing, the trial court merged Saylor's conviction for intimidation with his conviction for vicarious sexual gratification and sentenced Saylor to 45 years for each of his child-molesting convictions, 18 years for his vicarious-sexual-gratification conviction, and 30 years for the habitual-offender enhancement, for an aggregate term of 138 years. We affirmed on direct appeal. *Saylor v. State*, No. 39A01-0712-CR-574 (Ind. Ct. App. Sept. 17, 2008), *trans. denied*.

[11] Saylor filed a petition for post-conviction relief in 2014. Following a hearing, the judge entered findings of fact and conclusions of law denying relief.[1]

---

[1] Saylor filed a motion to correct errors, in which he alleged that the post-conviction court did not address all of the issues that he raised in his post-conviction petition, *see* P-C App. p. 1-2, but, as the State points out, this motion was deemed denied the day before Saylor filed the notice of appeal in this case, *see* Appellee's Br. p. 2 & n.6.

[12] Saylor, pro se, now appeals.

# Discussion and Decision

[13] Saylor contends that the post-conviction court erred in denying his petition. Defendants who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *reh'g denied*. Post-conviction proceedings are not an opportunity for a "super-appeal." *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *reh'g denied*. Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. Ind. Post-Conviction Rule 1(1); *Timberlake*, 753 N.E.2d at 597. In post-conviction proceedings, complaints that something went awry at trial are cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

[14] Post-conviction proceedings are civil proceedings, requiring the petitioner to prove his claims by a preponderance of the evidence. *Stevens,* 770 N.E.2d at 745. We review the post-conviction court's legal conclusions de novo but accept its factual findings unless they are clearly erroneous. *Id.* at 746. The petitioner must establish that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002).

Saylor raises two main issues on appeal. He contends that his trial counsel was ineffective for multiple reasons and that his guilty plea to the habitual-offender charge was not knowing, voluntary, and intelligent because he did not personally waive his right to a jury trial.

# I. Ineffective Assistance of Counsel

Saylor first contends that defense counsel was ineffective. We review claims of ineffective assistance of trial counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pruitt v. State*, 903 N.E.2d 899, 905-06 (Ind. 2009), *reh'g denied*. To satisfy the first prong, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, "committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied*. To satisfy the second prong, the defendant must show prejudice: "a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.*

## A. Failure to Object

Saylor argues that defense counsel was ineffective for not objecting to (1) the trial court's failure to administer an oath to B.D. before she testified at trial and (2) the prosecutor's impermissible vouching during closing argument. To prevail on a claim of ineffective assistance due to the failure to object, the

defendant must show an objection would have been sustained if made. *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007), *reh'g denied*. In determining whether an objection would have been sustained, we presume that the trial judge will act according to the law. *Strickland*, 466 U.S. at 694.

# 1. Oath

[18] Saylor first argues that defense counsel was ineffective for not objecting when the trial court failed to administer an oath to twelve-year-old B.D. before she testified at trial. After opening statements, the State called B.D. as its first witness. When B.D. took the stand to testify, the judge asked B.D. the following questions in the presence of the jury:

> [Judge]: Okay. [B.D.], I need to ask you a few questions, and you're going to have to answer yes or no so we can hear you. Okay? Uh...I'm first going to ask you, how old are you?
>
> A. Twelve.
>
> Q. Okay. And uh...you understand that anything you say in here is supposed to be the truth and not a lie?
>
> A. Yes.
>
> Q. Okay. And I want to be sure that I...I know that you know the difference. Now what color is that?
>
> A. Orange.
>
> Q. Okay. And if you told me it was black, would that be true?
>
> A. No.
>
> Q. Would it be a lie?

A. Yes.

Q. And if you told me it was orange, would that be true?

A. Yes.

Q. Okay. You understand that it's important that any question that's asked of you today be true and not a lie? [2]

A. Yes.

Q. And also if you don't understand the question and you're not sure how to answer it because you don't understand it, you can just say that. Okay?

A. Yes.

Q. So that you don't have to worry about whether your answer would be true or not because you can't do that if you don't understand the question. Okay?

A. Yes.

* * * * *

[Judge]: Okay. I believe that she is qualified, and I believe that what I have done is the best way of providing an oath for her . . . .[3]

[Prosecutor]: Judge, did you want to administer an oath, or are you satisfied?

---

[2] Taken in context, we find that the judge meant to say that it was important for B.D.'s answers to the questions be true and not a lie.

[3] Saylor argues that this statement by the judge constitutes impermissible vouching because it intruded on the jury's job to determine credibility. But the judge did not comment on B.D.'s credibility; rather, the judge concluded that B.D. had sufficiently affirmed that she would tell the truth. Because these are different inquiries, defense counsel was not ineffective for failing to object to this statement.

[Judge]: Pardon?  I'm satisfied.  And if you wish to ask any other questions, you certainly may.

[Prosecutor]: No, we're satisfied as well.  Thank you, Your Honor.

Tr. p. 332-35.

[19]   Indiana Evidence Rule 603 requires that "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully.  It must be in a form designed to impress that duty on the witness's conscience."  *See also* Ind. Const. art. 1, § 8 ("The mode of administering an oath or affirmation, shall be such as may be most consistent with, and binding upon, the conscience of the person, to whom such oath or affirmation may be administered."); Ind. Code § 34-45-1-2 ("Before testifying, every witness shall be sworn to testify the truth, the whole truth, and nothing but the truth.  The mode of administering an oath must be the most consistent with and binding upon the conscience of the person to whom the oath may be administered.").  No particular form of oath is required, and the form may be applied flexibly so as to be meaningful to children and mentally impaired witnesses.  13 Robert Lowell Miller, Jr., Indiana Practice, *Indiana Evidence* § 603.101 (3d ed. 2007); *see also Perry v. State*, 524 N.E.2d 316, 317 (Ind. 1988) (explaining that it is not a "realistic approach" to give a child an adult oath because that would not show "whether a small child understands that he is to tell the truth").  Whether a witness has sufficiently declared by oath or affirmation to testify truthfully is a determination to be made by the trial court.  13 Miller, *supra*, § 603.101.

[20] In addition, Indiana Evidence Rule 601 addresses competency of witnesses. Rule 601 presumes that every person is a competent witness unless otherwise provided by statute or rule. "A child is only competent to testify if it can be established" that the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Ackerman v. State*, No. 49S00-1409-CR-770, slip op. at 28 (Ind. Apr. 5, 2016) (noting that it "seems highly unlikely that a three-year-old would be able to comprehend that she was under oath and required to only tell the truth"); *Kien v. State*, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007), *trans. denied*. Like oaths, there is no prescribed form to determine whether a child is competent to testify. *See LeMaster v. State*, 498 N.E.2d 1185, 1187 (Ind. 1986). The trial court has discretion to determine whether a child witness is competent based on the court's observation of the child's demeanor and the child's responses to questions posed by counsel and the court. *Richard v. State*, 820 N.E.2d 749, 754-55 (Ind. Ct. App. 2005), *trans. denied*.

[21] Saylor claims that the trial court's "questioning was insufficient to constitute an oath" because "[n]othing in the trial court's questioning of B.D. made testifying truthfully binding upon her conscience." Appellant's Reply Br. p. 2. We disagree. The trial court examined B.D. to simultaneously (1) determine whether she was competent to testify and (2) administer an oath to her. The trial court explored whether B.D. was capable of understanding her obligation to tell the truth, inquired whether B.D. could distinguish between the truth and a lie and knew what the truth was, and was satisfied that B.D. had given an

oath. Because the trial court properly administered an oath to B.D., Saylor has not demonstrated that the trial court would have sustained an objection by defense counsel.

## 2. Prosecutor's Closing Argument

Saylor next argues that his defense counsel was ineffective for not objecting to the prosecutor's impermissible vouching during closing argument. It is improper for a prosecutor to make an argument that takes the form of personally vouching for a witness. *See Schlomer v. State*, 580 N.E.2d 950, 957 (Ind. 1991) ("I'm not gonna say Detective McGee is ever gonna be a brain surgeon or a rocket scientist, but I believe Detective McGee when he tell[s] us what happened . . . ."); *Gaby v. State*, 949 N.E.2d 870, 880 (Ind. Ct. App. 2011) ("I cannot and would not bring charges that I believe were false."). However, a prosecutor may comment on a witness's credibility if the assertions are based on reasons arising from the evidence presented at trial. *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006); *Gaby*, 949 N.E.2d at 881. In addition, a prosecutor may properly argue any logical or reasonable conclusions based on his own analysis of the evidence. *Neville v. State*, 976 N.E.2d 1252, 1260 (Ind. Ct. App. 2012), *trans. denied*.

Saylor highlights ten statements from the State's thirty-page-long closing argument that he believes are the "most troublesome." Appellant's Br. p. 17. These statements focus primarily on B.D., Mardello, and M.D.

[24] As for B.D., Saylor claims that the prosecutor impermissibly vouched for her during closing argument:

> Let's talk about [B.D.]. She is being truthful about her stepfather. [B.D.] is a credible witness.

Tr. p. 884.[4] The prosecutor then said that the trial court would give the jury an instruction on credibility because it was the jury's job to determine credibility and that when the jury considered the medical evidence and the testimony from the other witnesses, B.D.'s testimony "ma[de] sense" and was "support[ed]." *Id.* at 884, 885-86.

[25] We find that the prosecutor properly commented on B.D.'s credibility because the assertions were based on reasons arising from the evidence presented at trial. B.D.'s credibility was a significant topic addressed by both sides during closing arguments. The State argued that B.D. was credible because her testimony was consistent with the medical evidence[5] and with the testimony

---

[4] Saylor appears to argue that the prosecutor should not have argued that B.D. was credible because B.D. admitted during a pre-trial protected-person hearing that she was "used to telling a lie." Tr. p. 206. Saylor takes this statement out of context. At the hearing, B.D. explained that because Saylor had threatened to harm her if she told anyone what was happening, she was used to not telling the truth about what was really happening.

[5] Regarding the medical evidence, Saylor argues that the prosecutor should not have argued that the medical evidence supported B.D.'s allegation that Saylor molested her because B.D. had sexual intercourse with other people besides Saylor. This was a proper argument based on the prosecutor's analysis of the evidence.

from the other witnesses. Because the prosecutor did not personally vouch for B.D., defense counsel was not ineffective for not objecting to this statement.

[26] Saylor next claims that the prosecutor impermissibly vouched for Mardello. He points to this portion of the prosecutor's closing argument:

> [T]he emotion in Jasmin [Mardello's] testimony supports the credibility of [B.D.]. I argue to you Jasmin Mardello absolutely believes that happened because of the experiences that she had [when B.D. first revealed the abuse to her]. She was crying in court because she was reliving the pain, and she was reliving the horror of [B.D.]. That means you may make a reasonable inference that [B.D.] is a truthful witness.

*Id.* at 889.

[27] Notably, the prosecutor did not argue that Mardello was credible because she was emotional; rather, the prosecutor argued that, based on Mardello's demeanor in court, the reasonable inference was that B.D. was telling the truth when she first revealed the abuse to Mardello. This was a proper argument based on the logical or reasonable conclusions from the prosecutor's analysis of the evidence. Accordingly, defense counsel was not ineffective for not objecting to this statement.

[28] Last, Saylor claims that the prosecutor impermissibly vouched for M.D. by arguing that M.D. "told the truth" because he could get in trouble for having sexual relations with B.D. Tr. p. 925. But the prosecutor argued the opposite— that M.D. could *not* be prosecuted based on his testimony in this case because the State promised not to prosecute M.D. *See* Ex. 13 (letter from the prosecutor

to the children's guardian ad litem explaining that "none of the children in this matter will be subject to criminal prosecution as a result of any testimony they may provide concerning . . . Saylor.").[6] The prosecutor's argument was proper because it was based on reasons arising from the evidence presented at trial. Accordingly, defense counsel was not ineffective for not objecting to this statement.[7]

## B. Admitting Guilt During Closing Argument

[29] Saylor argues that defense counsel was ineffective because he admitted Saylor's guilt to both counts of Class A felony child molesting during closing argument. Saylor argues that defense counsel's admission "nullified the jury's need to determine guilt or innocence beyond a reasonable doubt" on those charges. Appellant's Br. p. 7.

---

[6] Regarding this letter, Saylor argues that defense counsel was ineffective for not telling the jury that the children were not subject to prosecution for their testimony against Saylor. The record shows, however, that the letter was admitted into evidence at trial, *see* Tr. p. 626-27 (defense counsel stipulating to the letter's admission), and the prosecutor talked about it during closing argument, *see id.* at 925 ("Did you al[l] read that letter from the State of Indiana?").

[7] Although listed under the vouching section of his brief, Saylor argues that the prosecutor improperly commented on his and his son J.M.S.'s credibility. Defense counsel argued during closing argument that the more credible witnesses were J.M.S. and Saylor. The prosecutor responded during rebuttal by pointing out that J.M.S. testified to smoking marijuana, arguing that J.M.S.'s testimony that he did not hear B.D. scream was not credible because he was high. The prosecutor also argued that Saylor's letter to a friend, in which he described the allegations against him as "Somebody said I was fu**ing sissy," "sp[oke] volumes about Mr. Saylor's credibility." Tr. p. 921. Both matters were entered into evidence at trial and were properly used by the prosecutor to argue against J.M.S.'s and Saylor's credibility. Accordingly, defense counsel was not ineffective for not objecting to these statements.

[30]     An attorney's statements during opening statement or closing argument may constitute judicial admissions that are binding on the client. *See* 13 Robert Lowell Miller, Jr., Indiana Practice, *Indiana Evidence*, § 801.421 (3d ed. 2007); 32 C.J.S. *Evidence* § 599 (2008). To constitute a judicial admission, the attorney must make "a clear admission of a material fact." 32 C.J.S., *supra*, § 599. "Improvident or erroneous statements or admissions" resulting from "unguarded expressions or mistake or mere casual remarks, statements[,] or conversations" are not judicial admissions. *Collins v. State*, 174 Ind. App. 116, 366 N.E.2d 229, 232 (1977), *reh'g denied*. It is "particularly important" in criminal cases that the defendant "be protected from inadvertent slips of the tongue of his attorney" and be "protected against any and every statement of his counsel which is not definitely and purposely intended as and for an admission." *Id.* (quotation omitted). "[B]efore a statement by an attorney can be held to be [a judicial] admission it must be given a meaning consistent with the context in which it is found." 32 C.J.S., *supra*, § 599.

[31]     During closing argument, defense counsel said that "Mr. Saylor was not the only person that was having sex with [B.D.] . . . . " Tr. p. 909. This statement is part of counsel's four-page argument that the State's medical evidence, particularly Scifres's testimony about B.D.'s healed vaginal tear and hymenal thinning, did not prove that Saylor molested B.D. Defense counsel pointed out that B.D. gave Scifres an inaccurate sexual history—that is, B.D. told Scifres that Saylor had sexual intercourse with her, but she did not tell Scifres about sexual intercourse with anyone else. Defense counsel then provided several

other explanations for B.D.'s injuries—including the vibrator found in M.D.'s room and the fact that B.D. had sexual intercourse with M.D., M.D.'s friend, and the family dog.[8] Based on this evidence, defense counsel concluded that "the fact that [B.D.] has a stretched hymen, has indications of sexual activity, the conclusion doesn't come that it's Mr. Saylor." Tr. p. 910.

[32] When taken in context, defense counsel did not admit that Saylor committed both counts of Class A felony child molesting. Saylor's defense at trial was that he did not molest B.D. or force M.D. to have sexual intercourse with B.D., and defense counsel vigorously and consistently argued this during closing argument. Nevertheless, in making a point about the State's medical evidence, defense counsel inadvertently said that Saylor "was not the only person that was having sex with" B.D. At the post-conviction hearing, defense counsel testified that he did not remember making this statement. P-C Tr. p. 10. And notably, the State did not capitalize on it during its rebuttal argument, which supports the conclusion that defense counsel did not intend for it to be an admission to both counts of Class A felony child molesting. Accordingly, we find that defense counsel's inadvertent statement, although a mistake, was not a judicial admission. *See Collins*, 366 N.E.2d at 232 (concluding that "an

---

[8] Saylor argues that defense counsel was ineffective for not telling the jury that B.D. had sexual intercourse with other people. To the contrary, defense counsel argued this during closing argument, and the record includes testimony from the DCS family case manager that B.D. reported sexual abuse by a man named "Joe" in 2004 and sexual intercourse with M.D.'s friend, Tr. p. 790, 792; testimony from a neighbor that Saylor taught B.D. to have "sex" with the family dog and then B.D. had "inappropriate relations" with the neighbor's dog, *id.* at 764-65; and testimony from Saylor that B.D. and M.D. had sexual intercourse with each other, *id.* at 837.

inadvertent admission made by counsel in the heat of argument" was not a judicial admission). Nevertheless, we are convinced that in light of the overwhelming evidence of Saylor's guilt, there is not a reasonable probability that, but for defense counsel's mistake, the result of the proceeding would have been different.[9]

# C. Cumulative Effect

[33] Finally, Saylor argues that when you consider the cumulative effect of defense counsel's errors, they amount to ineffective assistance of counsel. While the cumulative effect of a number of errors can render counsel's performance ineffective, *see Grinstead v. State*, 845 N.E.2d 1027, 1036 (Ind. 2006), here there is only one error by defense counsel: his isolated mistake during closing argument. This argument therefore fails.

---

[9] Saylor also argues that trial counsel was ineffective for failing to move for dismissal because Saylor should have been charged with incest rather than child molesting and vicarious sexual gratification. Saylor could not have been convicted of incest because he is not biologically related to either B.D. or M.D., as required by the incest statute. *See* Ind. Code Ann. § 35-46-1-3 (West 2004); *see also* Pub. L. No. 158-1987, § 5 (1987) (adding the requirement of a biological relationship and striking stepparent and stepchild from the list of potential incestuous relationships in the statute).

# II. Personal-Waiver Requirement

[34]    Saylor next contends that his guilty plea to the habitual-offender charge was not knowing, voluntary, and intelligent because he did not personally waive his right to a jury trial.[10] *See* Appellant's Br. p. 29.

[35]    The record shows that while the jury was in the jury room waiting for the habitual-offender phase of trial to begin, defense counsel requested a brief recess to discuss the habitual-offender charge with Saylor. The following colloquy then occurred:

> [Defense counsel]: . . . Your Honor, I've . . . I've discussed Mr. Saylor's options with respect to the . . . habitual phase, and I've explained to him he has a right to a jury. He could waive jury and have the Court decide or that we can plead guilty to it understanding that there are no promises or guarantees. He's pleading guilty open, and given the fact that we've already testified I think to facts that would constitute habitual offender status, he's willing to plead guilty and send the jury home.
>
> [Trial Court]: Okay. What I'm going to do, and there is evidence support[ing] that that is in the record, I'm going to read this charge to you, Mr. Saylor, and I'm going to ask you to make a

---

[10] Because a conviction as a result of a guilty plea is not an issue available to a defendant on direct appeal, this issue can be raised on post-conviction. *See Hall v. State*, 849 N.E.2d 466, 472 (Ind. 2006) ("Precisely because a conviction imposed as a result of a guilty plea is not an issue that is available to a defendant on direct appeal, any challenge to a conviction thus imposed must be made through the procedure afforded by the Indiana Rules of Procedure for Post-Conviction Remedies."); *see also Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996) ("One consequence of pleading guilty is restriction of the ability to challenge the conviction on direct appeal.").

plea on it. [substance of habitual-offender charge omitted]. To that charge, how do you plead? Guilty or not guilty?

[Saylor]: Guilty.

[Trial court]: Okay. The Court will accept that plea and will not[e] in the record that . . . that there is evidence in the file or probable cause to support . . . to lay a factual basis for that plea and will accept that plea.

Tr. p. 932-34.

[36] The Indiana Supreme Court recently reaffirmed the personal-waiver requirement in *Horton v. State*, No. 79S02-1510-CR-628 (Ind. Apr. 21, 2016). In that case, the State charged Horton with Class A misdemeanor domestic battery, which it sought to elevate to a Class D felony based on Horton's prior domestic-battery conviction. The trial was bifurcated. After Horton was found guilty of Class A misdemeanor domestic battery and while the jurors were still seated in the box, the trial court asked defense counsel how they intended to proceed on the Class D felony enhancement. Defense counsel responded, "as a bench trial." *Horton*, No. 79S02-1510-CR-628, slip op. at 3.

[37] On appeal, our Supreme Court noted that the jury-trial right is "a bedrock of our criminal justice system" and was guaranteed by both the federal and state constitutions. *Id.* at 5. The Court explained that "[i]n broad view, federal and Indiana constitutional jury trial rights guarantee the same general proposition— a criminal defendant must receive a jury trial, unless he waives it." *Id.* at 5-6. The Court then acknowledged that "Indiana's jury trial right provides greater

protection" because the Indiana Supreme Court—dating back to 1977 and as recently as 2006—has held that a jury-trial waiver is valid only if it is communicated *personally* by the defendant. *Id.* at 6 (citing *Good v. State*, 267 Ind. 29, 366 N.E.2d 1169 (1977); *Kellems v. State*, 849 N.E.2d 1110 (Ind. 2006)). The Court cited the source for the personal-waiver requirement as Indiana Code section 35-37-1-2, which provides:

> *The defendant* and prosecuting attorney, with the assent of the court, may submit the trial to the court. Unless *a defendant* waives the right to a jury trial under the Indiana Rules of Criminal Procedure, all other trials must be by jury.[11]

(Emphases added).

[38] Applying these principles, the Court found that "the record [was] devoid of any personal waiver by Horton to the court—it shows waiver only by Horton's attorney." *Horton*, No. 79S02-1510-CR-628, slip op. at 7. Although the State asked the Court to make an exception "where circumstances nevertheless imply waiver was the defendant's choice"—such as where "Horton had just experienced a jury trial and thus was probably 'aware' of the right his attorney waived on his behalf"—the Court "decline[d] to carve out an exception." *Id.* at 8. Instead, given the "high stakes of erroneous jury-trial deprivation and the

---

[11] As our Supreme Court explained in *Horton*, this statute was amended effective July 1, 2015, to "make[] clear" that the personal-waiver requirement applies only in felony prosecutions, because Criminal Rule 22 provides that a defendant charged with a misdemeanor is presumed to waive the jury-trial right unless he invokes it in writing at least ten days before the first scheduled day of trial. *Horton*, No. 79S02-1510-CR-628, slip op. at 6 n.1.

low cost of confirming personal waiver," the Court "maintain[ed]" its "time-honored" personal-waiver requirement. *Id.* Concluding that the trial court's "failure to confirm Horton's personal waiver before proceeding to bench trial was fundamental error," the Court vacated his Class D felony conviction for domestic battery and remanded for a new trial on that charge. *Id.*

[39] We acknowledge that this case involves a guilty plea—not a bench trial like in *Horton*—and that there is a different statute that governs guilty pleas. Specifically, Indiana Code § 35-35-1-2 provides, in pertinent part:

> (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant:
>
> * * * * *
>
> (2) has been informed that by the defendant's plea the defendant waives the defendant's rights to:
>
> (A) a public and speedy trial by jury . . . .

Despite these differences, we find that the same rationale applies when a defendant waives his right to a jury trial when pleading guilty. Because the right to a jury trial is a bedrock of our criminal-justice system, the same protection should be afforded to defendants who plead guilty—and not just to those who proceed to a bench trial. Accordingly, when a defendant pleads guilty, he must personally waive his right to a jury trial.

Here, there is no evidence that Saylor personally waived his right to a jury trial on the habitual-offender charge. Instead, after the first phase of trial ended, *defense counsel* told the trial court that Saylor was "willing to plead guilty and send the jury home." Because Saylor did not personally waive his right to a jury trial, we vacate his habitual-offender adjudication and remand for a new trial on that charge.[12]

Affirmed in part, and vacated and remanded in part.

Bailey, J., and Crone, J., concur.

---

[12] In light of this holding, we do not need to address Saylor's argument that the trial court failed to advise him of his three *Boykin* rights before he pled guilty to the habitual-offender charge.